# CHARLESTON.

## STATE *v.* A. L. LOHM.

### Submitted September 23, 1924. Decided December 16, 1924.

1. CRIMINAL LAW—*Error Not to Require Private Prosecutor to Disclose His Employer.*

   It is error for the trial court to overrule the motion of a defendant in a criminal case to require a private prosecutor to disclose his employer to the court and to defendant's counsel. (p.657).

2. JURY—*Membership in Organization Interested in Prosecution Does Not Disqualify Juror.*

   Where a representative of an organization, at the instance of several members thereof, procures affidavits and turns them over to the prosecuting attorney for use in a particular case, mere membership in such organization does not *per se* disqualify a juror in that case. (p. 658).

3. SAME—*Overruling of Motion to Exclude Jurors Belonging to an Organization Interested in the Prosecution When Such Jurors Took No Part in Aiding the State Does Not Constitute Error.*

   Upon the *voir dire* examination of jurors who were members of such organization and otherwise qualified to serve on the jury it appeared that they had never heard the charge against the accused discussed in any way, had never taken any part in securing evidence for or in aiding the state, knew nothing about the facts in the case, and were sensible of no bias against the accused. No evidence being offered from which bias or prejudice could be inferred, it was not error for the trial court to overrule a motion of the defendant to exclude such jurors from the panel. (p. 659).

4.  CRIMINAL LAW—RAPE—*State Not Required to Elect at Begin-
    ning of Trial Upon Which of Several Acts of Sexual Inter-
    course Between Prosecutrix and Defendant It Will Rely for
    Conviction.*

    At a trial for statutory rape, the prosecuting attorney hav-
    ing evidence of several sexual acts between the prosecutrix
    and the defendant, may not be required, on motion of defen-
    dant, made at the beginning of the trial, to announce at that
    time the particular act upon which the state expected to rely
    for conviction. He may withhold his election until the close
    of the state's case. (p. 660).

5.  SAME—*Evidence that Defendant Gave Prosecutrix Intoxicants
    on Occasions When Sexual Intercourse Was Committed or
    Attempted Not Error.*

    In a prosecution for a sexual crime, the admission of evi-
    dence that the defendant gave to the prosecuting witness
    intoxicants not only upon the date of the substantive offense,
    but upon other occasions when sexual acts were committed or
    attempted, is not error. (p. 661).

6.  SAME—*Prejudice to Defendant Will Be Inferred From Re-
    marks by Prosecuting Attorney Not Warranted by Evidence
    and Intending to Inflame the Minds or Disturb the Deliber-
    ations of the Jury.*

    If a prosecuting attorney makes a statement in his argu-
    ment to the jury, not warranted by the evidence, and if such
    a statement is calculated to inflame the minds of the jury
    against the defendant and disturb the calm deliberation of the
    jury so essential to a fair verdict, and the trial court upon
    motion refuses to instruct the jury to disregard such state-
    ment, prejudice to the defendant will be inferred. (p. 662).

Error to Criminal Court, Harrison County.

Action by Albert L. Lohm, convicted of the crime of rape,
and he brings error.

*Reversed and remanded.*

*Robinson & Robinson,* and *Charles J. Schuck,* for plaintiff
in error.

*E. T. England,* Attorney General, and *R. A. Blessing,* As-
sistant Attorney General, for the State.

HATCHER, JUDGE:

Defendant Lohm seeks to reverse the judgment of the Criminal Court of Harrison County, by which he was convicted of the crime of rape upon a girl under the age of sixteen years, and sentenced to serve fifteen years in the penitentiary. The judgment was the result of a second trial of the accused, the jury in the first prosecution having failed to arrive at a verdict. Though counsel set out twenty-two assignments of error, based on practically every phase of the case, from the indictment to the refusal of the circuit court to award a writ of error to the Criminal Court's judgment, they confine themselves in argument to substantially eight points. Although our determination of the case is not founded upon the evidence, a brief summary of the proof is essential to an understanding of certain of the points relied upon.

Defendant is a lawyer, and at the time of the alleged crime was well established in practice in Clarksburg. By reason of his professional, social and political activities his trials upon so grave a charge were attended with unusual public interest and notoriety. The case, as made out by the state, is that defendant met the prosecuting witness for the first time on December 31, 1920, and from that time developed an illicit acquaintanceship with her, which relation culminated in an act of intercourse alleged to have occurred February 2, 1923. It was upon this particular act that the state elected to stand for a conviction. The girl was less than sixteen years old at the time. Evidence of other acts of intercourse, notably one occurring January 29, 1923, was introduced, but after the state's election the offer of such evidence was justified by the prosecution merely as persuasive proof of the offense of February 2, 1923.

The defense was an absolute denial of any and all of the incriminating evidence offered by the state. It was charged that the first meeting of defendant and the witness occurred in defendant's office, and that their acts of intercourse took place at Terra Alta, where she lived for a time, and later in defendant's law office. Defendant says the girl was never in his home, that he never visited her at Terra Alta or any other place and that she never was in his office, except that she might have been there with her mother in July or August,

1920, when he and the mother had an interview on a matter of business. In short, he denied having had intercourse with the witness on February 2, 1923, or at any other time. Defendant and other witnesses in his behalf undertook to prove his whereabouts and activities on the evenings of January 29th and February 2nd, but of all this the jury must be held to have had the right to judge, and their verdict must control, unless we find that it was arrived at illegally.

A formal assignment of error relates to the sufficiency of the indictment, but counsel present no argument on the matter, and we deem the indictment sufficient.

We stated above that the public manifested considerable interest in the trials. This was especially true of certain organizations in Clarksburg. One was the Kappa Sigma Pi, seemingly a young peoples' organization fostered by certain of the churches. The other was the Ku Klux Klan. The latter, according to the affidavit of the chairman of its executive committee, was especially zealous in procuring affidavits in aid of the prosecution of the defendant. Such activity on the part of the above organizations together with the general public animus, which it is contended was directed towards defendant, constitutes the basis of his second assignment of error, that is, that he was improperly denied a change of venue.

Defendant was first brought to trial on March 22, 1923. The jury, not being able to agree, was discharged on the 24th. The second trial began on June 18th, on which date defendant filed his petition for a change of venue. He supported it with thirteen affidavits, including his own, and eight excerpts from newspapers and kindred publications, all indicative of the public interest in the prosecution. The affidavits are evidence not alone of public interest, but if they are to be credited to any degree, show also that the citizens of Clarksburg and the community entertained no little ill will and even prejudice against defendant. Such feeling was made manifest by the bitter remarks of the people who thronged the court room at the first trial, also by the conversations of those frequenting hotel lobbies and other public places. One affidavit is that of F. C. Wilkes, a special writer of syndicated articles for magazines. In pursuing a study of the Ku Klux

Klan and its workings he swears that he interviewed the chairman of the Klan's executive committee, and that that officer stated not only that the organization initiated the prosecution, but that the membership in Harrison County were determined to back the case to the end. According to this affidavit, the executive committee at first offered defendant the opportunity to quit the city, and it was upon his refusal to do so that the case proceeded.

The newspaper articles were taken from the Searchlight (the official organ of the Ku Klux Klan, as shown by the record), issues of March 10th, March 30th and March 31st, 1923; Cumberland (Md.) Times, issue of February 17, 1923; Clarksburg Telegram, issues of March 21st and 22nd, 1923; Clarksburg Exponent, issue of March 22, 1923; Fairmont (W. Va.) Times, issue of March 22, 1923. Each of these excerpts was in the nature of a sensational "story" telling of the revolting character of the alleged offense, and the Searchlight capitalized especially the work accomplished by the Ku Klux Klan in connection with the prosecution. The issues published at the time of the first trial carried copious quotations from the testimony. We can not doubt that the articles published were calculated to arouse popular feeling among those who might read them. In the accounts of the testimony, the evidence as to the wild orgies and parties alleged to have been carried on in defendant's office were portrayed in great detail. Defendant's denial of the accusations received relatively less attention. One element, however, is lacking; nowhere do we find any mention of the extent of the circulation of the various publications in Harrison County, and, of course, if they were to affect public opinion, it was necessary that they be distributed. Except in the case of the two local newspapers, we have no right to assume that the publications mentioned had a wide circulation in the county.

The state did not lack for affidavits. A number of persons, including the sheriff of the county, were of opinion that a fair trial of the accused could be had in the county, and the chairman of the Ku Klux Klan's executive committee avowed that while at the request of certain Klan members he had turned certain affidavits over to the prosecuting attorney, neither he

nor the Klan was any more interested in the prosecution of the accused than any other class of good citizens would be.

After all the difference of opinion between the various affiants, however, we are struck by the circumstance that in spite of the public feeling and newspaper reports, defendant did secure a drawn verdict in the first trial. Further, all of the newspaper accounts were dated practically three months prior to the second trial. If at the time of their publication public indignation did not dictate a verdict, would not the chance of a fair and impartial trial be much greater three months afterward? We so indicated in *State* v. *Powers*, 91 W. Va. 737, 113 S. E. 912, wherein we said:

> "If the cause upon which application for change of venue is ill feeling or prejudice against the prisoner, such cause must be shown to exist at the time the application is made, not that it existed at some distant prior date. The existence of local prejudice and ill feeling against the prisoner at a term of court held three months before the time of making an application, is not sufficient to warrant the assumption that such feeling existed at the time of the application, especially where there are numerous affidavits from representative citizens that no such feeling or prejudice exists."

We can not hold that the trial court abused its discretion in refusing the change of venue, a discretion which has been fortified by our decisions from *State* v. *Greer*, 22 W. Va., 800, to the Powers case, cited above.

The facts as evidenced by the affidavits in support of the motion for a change of venue are pertinent also to other errors raised, otherwise the foregoing discussion of them might be more elaborate than required. Before the *voir dire* examination of the jurors, the defendant moved the court to require F. M. Powell, private counsel who assisted the state in the prosecution, to disclose to the court and to the defendant's counsel the source of his employment. This motion was overruled, and the defendant alleges error. Counsel for defendant stated to the court when he made the motion that the right of Mr. Powell to assist was not questioned, but that the main reason for the motion was to secure information to en-

able defendant's counsel to more thoroughly and properly examine the jurors on their *voir dire*.

Under our theory of the law, an act of violence is a crime against society rather than the individual, and punishment therefor is the duty of the state and not the privilege of the individual. Punishment by the state, however, must be preceded by a conviction secured at a trial conducted throughout with the utmost fairness. Sec. 7, ch. 120, Code, provides that at such a trial the individual may assist the state. See also: *State* v. *Stafford,* 89 W. Va. 301, 109 S. E. 326.

The first proceeding at a fair trial is to furnish the accused with full information of the charge against him. Does not equal fairness require that he have full information of all forces arrayed against him? Is it not just as important for him to know his opponents as it is to know the offense with which those opponents charge him?

One can not conceive of a legal prosecution for crime in this country in which the part played by the state at the trial would be concealed in any way from the accused. Why then conceal from him the individual whose representative for the purpose of prosecution becomes one with the state? No prosecution is permitted except under the banner of the state. Assuming the livery of the state, he must affect the deportment of the state. Mr. Powell's refusal to name his employer is not consistent with the high standard of fairness expected of the state.

Another requisite of a fair trial is a fair jury. In order to secure a jury as free from bias and prejudice as may be humanly possible a juror may be questioned on his *voir dire* not only as to his personal bias and prejudice, but as to his connection or association with any person or agency prejudicial or unfriendly to the accused. Such interrogation may furnish information of value in striking the panel where it does not actually disqualify a juror.

Bias against or hostility to the accused may usually be inferred from the employment of a private prosecutor. Can a juror related to or closely associated with one employing such a prosecutor be held entirely free from bias? Even so, the accused is entitled to test the conscience of a juror most thoroughly in this matter. How can this right be intelli-

gently exercised if a private prosecutor is permitted to with-hold the name of his employer? We find support for these views in the opinion of the Nebraska court in the case of *Knights* v. *State,* 58 Neb. 225,. 78 N. W. 508, 76 Am. St. Rep. 78:

> "The spirit and policy of our laws recognize the right of a defendant in a criminal case to be informed in advance not only of the nature of the accusation but also of the forces that are mar-shaled against him. In public prosecutions fair-ness is a cardinal virtue which the representatives of the state should not be permitted to ignore."

The trial court refused to exclude from the jury two jurors who were members of the Ku Klux Klan. The defendant charges error, because the prosecution of the case had been instigated by a representative of the Klan.

These two jurors were examined very carefully by the court. From this examination it appeared that they knew nothing about the facts in the case, that they had never dis-cussed it with any one and had never been approached by any one in regard to the case, that they had never been at any meeting where the case was discussed, and had never taken any part in securing evidence for the state or in aiding the state in any way. It was not shown that they even knew of the assistance rendered to the state by the Klan repre-sentative.

Counsel for defendant contend that in so far as the motion goes the Klan should be considered as a law and order league, and that its members could not be held to be indifferent to the result of a prosecution instigated by its representative. There is authority supporting this contention, but the facts do not warrant its application in this case. The general view taken is that as the object of government is to protect indi-viduals in their rights, and to punish invasions of those rights, it is the duty of all good citizens to furnish the state information of crimes committed, and to be interested in the prosecution and conviction of violators of the law. There-fore, membership in an organization seeking to uphold law and order and to have crime prosecuted, does not *per se* dis-qualify one from jury service.. We are impressed by the view

expressed in the opinion of the court in *Clarke* v. *State,* 154
Ark. 592, 243 S. W. 868:

> "The rule seems to be settled that mere mem-
> bership in committees or in societies or other or-
> ganizations for the suppression of crime, or the
> achievement of any other particular purposes does
> not operate as a disqualification of a juror unless
> it is shown that the particular individual has ac-
> tual bias or is directly connected with the matter
> under investigation in a way from which bias or
> prejudice will be implied." See authorities there
> cited, and monographic note, 31 A. L. R. p. 411.

It having been shown that the jurors complained of were
not connected in any way with the matter under investiga-
tion, and no bias having been shown, and there being no evi-
dence from which bias or prejudice can be inferred, we see
no error in permitting the jurors to serve.

Another assignment of error is the refusal of the trial court
to require the state to elect at the beginning of the trial the
particular sexual act upon which it would rely for conviction.
The law in that respect differs in the several  states. Some
states require an election by the state at the commencement
of the trial, while others require election at the close of the
state's case. The latter rule has long governed the practice
in our state. In the case of *State* v. *Chisnell,* 36 W. Va. 659,
at page 663, 15 S. E. 412, Judge BRANNON, speaking for the
court, said:

> "I regard the rule as properly laid down by the
> Kansas court, in *State* v. *Schweiter,* 27 Kan. 512,
> that the court may, in its discretion, permit the
> prosecutor, after offering evidence of a particular
> offense, to offer also evidence tending to prove sev-
> eral other distinct, substantive offenses, yet the
> court should, on motion, after all the evidence of a
> number of distinct offenses has been introduced, re-
> quire the prosecutor, before the defendant is put
> on his defense, to elect upon what particular trans-
> action he will rely for conviction."

The rule above quoted foreshadows our decision on the
next assignment of error, wherein defendant protests against

the introduction of testimony relative to acts of rape other than the one upon which the state elected to rely for conviction. That other acts of sexual intercourse are admissible in a rape case is settled in this jurisdiction by our holding in *State* v. *Driver*, 88 W. Va. 479, 481, 107 S. E. 189, 15 A. L. R. 917:

> "In a prosecution for an attempt to commit rape on a female under the age of consent, evidence of former attempts by the defendant upon the same female is admissible to show the lustful disposition of the defendant toward her, and the existence and continuance of illicit relations between them."

The defendant claims also that it was error to admit testimony as to the giving of intoxicants to the prosecuting witness on occasions other than at the time of the substantive offense. He argues that this class of evidence put his reputation in issue. We do not think so. It is well settled law that in the prosecution for sexual crimes "improper familiarities" may be shown as well as other acts of intercourse, for the purpose of showing the relations of the participants, 16 C. J. p. 592. If improper familiarities may be shown, for like reasons the giving of intoxicants to a female may be shown, the only purpose of such a gift being to excite the passions and to break down the resistance of the female to a lascivious embrace.

The prosecuting witness testified that one Charles Hall accompanied her to the home of defendant on December 31, 1920, and about a week later took her to defendant's office. Hall denied these statements and testified that he never was at the home of defendant, and was not at defendant's office at the time mentioned by the girl. Hall was asked by counsel for the State if he had not told one Gilbert that he, Hall, "had been on parties with Mr. Lohm at his home and in his office and on numerous parties." Hall denied making such a statement. Gilbert was permitted by the trial court to testify that Hall "mentioned the fact of being with Mr. Lohm at his office on parties with women and girls, not mentioning the girls' names, and also at Mr. Lohm's house." Defendant says

this was error, because the contradiction was on an irrelevant and collateral matter. If error, it can not be passed as harmless, as the prosecuting attorney made specific reference to the contradiction in his argument to the jury. Hall's statement that he did not take the prosecuting witness to the home of Mr. Lohm on December 31, 1920, and that he did not take her to defendant's office about a week later was pertinent to the issue. His statement that he never was at Mr. Lohm's home was irrelevant, except so far as it applied to the statement of Miss Stemple that he was there December 31, 1920. Gilbert's testimony that Hall stated he had been to Mr. Lohm's home on parties with women and girls was a contradiction of the evidence that Hall had never been to Mr. Lohm's house, but is a contradiction on an irrelevant matter. Gilbert's statement that Hall mentioned being with Lohm at his office on similar parties is no contradiction of Hall's denial that he took the prosecuting witness to defendant's office about a week after December 31, 1920, and is not admissible under any theory of evidence applicable to this case, and the trial court erred in its admission.

Another assignment of error is made because the court permitted witness Sinsel to testify that he had seen the defendant have sexual intercourse with the prosecuting witness on several occasions prior to the date elected by the state. If the prosecuting witness has the right to testify as to her prior sexual acts with the defendant, we see no error in permitting testimony as to the same or similar acts by one who witnessed them. Such testimony would show the "existence and continuance of illicit relations" just as well as that of the prosecutrix herself.

Certain remarks of the prosecuting attorney in his closing argument were objected to at the time and the court's ruling thereon is assigned as further error. The remarks objectionable to defendant's counsel were:

"I want to say to you, gentlemen of the jury, if you can find in your community or any community of decent people a more dangerous line of conduct than that practiced by Mr. Lohm, as shown by the evidence in this case—" (objection).

"I ask you again, gentlemen, can you conceive in your minds any excuse, justification or reason for it, when innocent homes have been invaded, according to the evidence in this case, and bright young boys and clean young girls have been taken away from their solicitous fathers and mothers and made prostitute, can you see any justification or excuse for that kind of crime?"

"I feel sorry for his home folks. But I feel more sorry for the innocent fathers and mothers who have had taken from under their care and protection the chaste and upright lives of young boys and girls, as shown by the evidence in this case. That is where your danger is."

That great latitude is allowed counsel in the argument of cases is an established rule of law. It is equally well settled, however, that counsel must keep within the evidence and not make statements calculated to inflame the minds of jurors and tending to induce verdicts warped by prejudice. We do not find evidence warranting the statement that "clean young girls have been taken," etc., there being no evidence of the debasement of any girl other than the prosecuting witness. "Sorrow for the innocent fathers and mothers," etc., expressed at the time it was and in the manner it was, likely tended to disturb the calm deliberation of the jury, so essential to a fair verdict. We can not say that these statements of the prosecuting attorney were not prejudicial to the defendant.

The final error assigned is that the trial court permitted the testimony of the witness, Chinn, given at a former trial of the case, to be inserted in the record in this case. This testimony was not permitted to go to the jury, and its mere insertion in the record could in no way have prejudiced the defendant.

For the foregoing reasons, we set aside the verdict of the jury, reverse the judgment, and remand the case for a new trial.

*Reversed and remanded.*