STATE OF WEST VIRGINIA

*v.*

JAMES A. KENNEDY

(No. 13919)

Decided November 21, 1978.

*Bogarad & Robertson, Martin S. Bogarad, William R. Kiefer* for plaintiff in error.

*Chauncey H. Browning,* Attorney General, *Stephen D. Herndon,* Assistant Attorney General, for defendant in error.

NEELY, JUSTICE:

This is an appeal from a conviction of breaking and entering under *W.Va. Code*, 61-3-12 [1923]. The appellant,

James A. Kennedy, contends that the circuit court erred by admitting into evidence an in-court identification of appellant based on an improper out-of-court identification. We agree and reverse.

Appellant Kennedy was convicted of breaking and entering Emig's Store in Wellsburg, West Virginia. At approximately 6:30 a.m. on November 10, 1974, Thomas Zurbach, manager of Emig's Store, went to his store to get a ladder. When he tried to open the back door, he found it was partially blocked. He reached around the door to turn on the lights and heard footsteps and a "jingle" indicating someone was exiting from the front. Mr. Zurbach ran around the outside of the store and observed two persons in front of the store. He pursued one of these through Wellsburg—a pursuit later joined by Officer Mike Friend of the Wellsburg Police Department. The pursuers lost their quarry and Mr. Zurbach returned to his store while Officer Friend continued searching. After Mr. Zurbach checked his store for missing merchandise, he accompanied Chief of Police Don Jackson to the police station. Chief Jackson received a call that Officer Friend and others had apprehanded a suspect, Mr. Kennedy, hiding in overgrowth between two buildings and were bringing him in. Mr. Jackson asked Mr. Zurbach to remain at the station and to nod if the suspect were the man he had been pursuing. Appellant was brought in handcuffs and Mr. Zurbach nodded to affirm a positive identification.

At trial Mr. Zurbach testified that he was never closer to his quarry than "the white doors in the courtroom" (apparently a distance of from forty to sixty feet) and never saw his quarry's face. His identification was based on the appellant's clothing, hair style, and general build. It was unclear whether Mr. Zurbach gave any description to the police before the suggestive out-of-court identification. At trial Mr. Zurbach was allowed to identify appellant based on his prior out-of-court identification. Appellant contends that the pretrial identification was unduly suggestive and the in-court identification based on it should have been excluded.

## I

The United States Supreme Court has clearly articulated the correct analysis in this type of case. *In Neil v. Biggers*, 409 U.S. 188 (1972), the Court set forth the following test which we have consistently followed:

> [T]he central question [is] whether under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive. As indicated by our cases, the factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation. 409 U.S. at 199 as cited in *State v. Casdorph*, ____ W.Va. ____ at ____, 230 S.E.2d 476 at 481 (1976).

After *Biggers* the courts of appeal developed at least two approaches to identification evidence: one focused on procedure and required exclusion of the out-of-court identification without regard to reliability whenever it was obtained by unnecessarily suggestive means and the other relied on the totality of the circumstances to admit out-of-court identifications which were obviously reliable despite suggestive procedures. The split in the circuits was resolved by *Manson v. Brathwaite*, 432 U.S. 98 (1977), which rejected the *per se* exclusionary rule and reaffirmed the totality of the circumstances test of which "reliability is the linchpin." 432 U.S. at 114.[1] The factors which would indicate reliability set forth in *Big-*

---

[1] Potential confusion concerning whether different tests were to be applied for the admissibility of pretrial identifications and in-court identifications was raised by Justice Marshall's dissent in *Brathwaite*. The confusion was eliminated by footnote nine of the majority opinion which declared *Biggers* to be a synthesis of all past cases involving both pretrial and in-court identifications to which a uniform rule based on reliability should be applied.

*gers* are to be considered and weighed against the corrupting effect of the suggestive procedure, which obviously would indicate lack of reliability. In recent years we have always followed the totality of the circumstances test regarding suggestive identifications. *State v. Casdorph*, ___ W.Va. ___, 230 S.E.2d 476 (1976); *State v. Slie*, ___ W.Va. ___, 213 S.E.2d 109 (1975).

We must now apply the detailed analysis of *Brathwaite* to the facts in the present case:

(1) *The opportunity of the witness to view the criminal at the time of the crime.* Mr. Zurbach testified that he was never closer than forty to sixty feet to his prey and never saw his face. The chase took place in the early morning hours of a winter day and the testimony indicated that visibility was less than ideal.

(2) *The witness' degree of attention.* Mr. Zurbach was undoubtedly concentrating on his task of pursuit.

(3) *The accuracy of the witness' prior description of the criminal.* It was disputed at trial whether Mr. Zurbach gave *any* pre-identification description. If any had been given it seems to be limited to a description of clothing and hair style with no mention of any distinguishing physical characteristics.

(4) *The level of certainty demonstrated by the witness at the confrontation.* The initial identification consisted only of a nod from Mr. Zurbach to Chief Jackson, but at trial Mr. Zurbach seemed very certain of his identification.

(5) *The length of time between the crime and the confrontation.* Only a few hours passed between the time Mr. Zurbach was in pursuit of someone and the time he identified appellant as that same person.

Based on the *Brathwaite* criteria, Mr. Zurbach's identification does have some, although admittedly few, aspects of reliability, but when these are weighed against the suggestive procedure of bringing the suspect before the identifier alone and in handcuffs the scale tips to-

ward unreliability and the identification must be excluded since there was a "substantial likelihood of irreparable mis-identification." *Simmons v. United States*, 390 U.S. 377 at 384 (1968). We agree with the Supreme Court that suggestive procedures *alone* should not be the basis of excluding an otherwise totally reliable identification and decline to adopt any more restrictive rule under State law; however, when suggestive procedures are connected with an identification of questionable reliability exclusion is the only remedy.

This exclusion does not prevent Mr. Zurbach from testifying concerning what he reliably observed; a person of a certain build, wearing certain clothing. The arresting officers in turn can testify to appellant's appearance at the time of his arrest. This becomes enormously important on the retrial of this case because of the weight of circumstantial evidence arising from the conditions of Mr. Kennedy's arrest. Testimony concerning the color of clothing and the build of the person he pursued passes the test in *Brathwaite*.

## II

Appellant also contends[2] that the Prosecuting Attorney's reference to him as a "pro" and the Deputy Sheriff's testimony that he practically fingerprinted himself were unduly prejudicial to him. While we do not necessarily find these excesses of prosecutorial zeal sufficiently prejudicial to merit reversal standing alone, we do find them sufficiently unfortunate to merit discussion. It is well settled that evidence tending to prove the accused committed offenses unrelated to the one before the Court is generally inadmissible. *State v. McAboy*, ____ W. Va. ____, 236 S.E.2d 431 (1977). We obviously find indirect proof or a suggestion of such unrelated crimes by prosecution or witness remarks equally improper for

---

[2] Appellant also assigns as error the failure of the State to allege specifically venue in his first trial; the use of photographic exhibits marked from the first trial; and, a confrontation between police officers and his brother outside the courtroom. We find these assignments without sufficient merit for discussion.

presentation before the jury. As we said in *State v. Lohm*, 97 W.Va. 652, 125 S.E. 758 (1924):

> That great latitude is allowed counsel in the argument of cases is an established rule of law. It is equally well settled, however, that counsel must keep within the evidence and not make statements calculated to inflame the minds of jurors and tending to induce verdicts warped by prejudice. *Id.* at 663, 125 S.E. at 762.

The best course is the exercise of proper self restraint regarding remarks not based on evidence which are calculated to prejudice the defendant in the jury's eye.

For the reasons stated above, the judgment of the Circuit Court of Brooke County is reversed and the case is remanded for a new trial.

*Reversed and remanded.*