347 S.E.2d 208

**STATE of West Virginia**

v.

**Floyd D. DOLIN.**

No. 16736.

Supreme Court of Appeals of West Virginia.

June 5, 1986.

Dissenting Opinion July 16, 1986.

James B. Lees, Jr., Preiser & Wilson, Charleston, for appellant.

Bethany Boyd, Asst. Atty. Gen., for appellee.

MILLER, Chief Justice:

Floyd Dolin was convicted by a jury in the Circuit Court of Kanawha County of first degree sexual assault. His main contentions are that the trial court erred in admitting evidence of collateral sexual offenses committed by the defendant upon the same victim and erred in its instruction to the jury on this evidence.

In the indictment returned in September, 1982, the defendant was charged with two counts of first degree sexual assault and one count of incest. The first count charged the defendant with forcing his daughter, who was then less than eleven years old, to perform oral sex on him. This count did not identify any specific dates, but merely alleged the acts had been committed within ten years prior to the date of the indictment. The second count charged the defendant with forcing his daughter to perform oral sex on him in January, 1981. The third count charged that the defendant had committed incest with his daughter under W.Va.Code, 61-8-12 (1931), within three years prior to the date of the indictment.

The trial court directed a verdict in favor of the defendant on the second count because of a variance between the facts alleged in the indictment and the evidence presented at trial. The jury acquitted the defendant on the third count, but convicted him on the first count of first degree sexual assault.

Prior to trial, the parties and the trial court agreed that the relevant time period under the first count which charged sexual intercourse with a person under the age of

eleven years was between August, 1976, and August, 1978. This agreement was based on the fact that the sexual assault provision, W.Va.Code, 61–8B–3 (1976),[1] did not become effective until June, 1976. Consequently, the defendant could not be charged with acts committed prior to its effective date. The outer limit of August, 1978, resulted from the fact that his daughter's eleventh birthday was August 31, 1978.

The only evidence presented against the defendant was the uncorroborated testimony of his daughter, who was sixteen years old at the time of the trial in 1984. She related to the jury her version of the sexual activity forced upon her by her father. Generally, the daughter was unable to recall specific details as far as the time and the place of the sexual encounters relevant to the first count of the indictment.

The daughter was asked by the prosecutor whether she had performed oral sex on her father at any time between August, 1976, and August, 1978. In response to this question, she stated, "Maybe once or twice every three months. I can't say just exactly, you know." She also explained that during this time period the defendant ordinarily did not force her to perform oral sex, but usually rubbed his sex organ on

her. During cross-examination, the daughter was unable to recall any specific instance during the relevant time period when the defendant forced her to perform oral sex on him.[2]

The daughter testified in more detail regarding an incident that occurred in her home in January, 1981, when she was thirteen years old. She testified that before noon on that date, the defendant entered the house and forced her to join him in one of the bedrooms. The defendant penetrated her sex organ with his sex organ, rubbed his sex organ on her stomach, and ejaculated. The daughter stated this was the last time the defendant sexually assaulted her.

The defendant's former wife testified that they were divorced November 9, 1977, and that the defendant was granted the right to visit his daughter. She also verified that the defendant did take their daughter to Parkersburg on one occasion and also verified another trip where the defendant was alone with their daughter. The daughter informed her mother for the first time on April 9, 1981, of the defendant's sexual activity with her. After the former wife testified, the State rested its case.

---

1. The relevant text of W.Va.Code, 61–8B–3(a)(3) (1976), provided:

"(a) A person is guilty of sexual assault in the first degree when:

\* \* \* \* \* \*

"(3) He, being fourteen years old or more, engages in sexual intercourse with another person who is incapable of consent because he is less than eleven years old."

The term "sexual intercourse" is defined in W.Va.Code, 61–8B–1(7), to include oral sex.

2. The daughter was able to recall six relatively specific instances of sexual activity, which were collateral to the crimes charged:

1. When she was seven years old, the defendant drove her in a van to a quarry, where he forced her to perform oral sex on him;

2. When she was eight or nine years old, after shopping for a new bicycle, the defendant took her to a motel in St. Albans and rubbed his sex organ on her stomach until he ejaculated;

3. In August of 1977, when she was ten years old, the defendant drove her to a remote location in South Charleston and rubbed his sex organ on her;

4. When she was twelve years old, the defendant took her on a shopping trip to Parkersburg, where they spent the night in a motel. During that night, the defendant rubbed his sex organ on her;

5. When she was twelve or thirteen years old, the defendant drove her to a hollow in South Charleston and forced her to perform oral sex on him; and

6. When she was twelve years old, the defendant drove her to Tennessee, where they stayed in a motel and he rubbed his sex organ on her.

As previously discussed, the first count of the indictment was limited to acts of oral sex committed between August, 1976, and August, 1978. The second count dealt with a specific incident of oral sex in January, 1981. The third count dealt with incest, which was defined in W.Va. Code, 61–8–12 (1931), in relevant part: "If any male person shall have *sexual intercourse* with his mother, sister or daughter." (Emphasis added). Consequently, under the former incest statute, none of the foregoing incidents of sexual activity would constitute incest. In 1984, the incest statute was broadened to include oral sex in the definition of sexual intercourse.

The defendant took the stand and denied each specific instance of sexual activity alleged by his daughter. He also testified that he was at work on the occasion in January, 1981, when the daughter testified he had vaginal intercourse with her. This alibi was also supported by another defense witness. Furthermore, he denied the general allegation that he had forced his daughter to perform oral sex on him between August, 1976, and August, 1978. The defendant testified that he had never made any advances of a sexual nature toward his daughter.

The defendant's chief complaint is that the trial court erred in permitting the daughter to testify about additional sexual offenses allegedly committed by the defendant on her which were collateral to the charges contained in the indictment. Once again we are presented with the difficult issue of whether evidence of collateral crimes should have been presented to the jury.

The general rule, as summarized in Syllabus Point 11 of *State v. Thomas,* 157 W.Va. 640, 203 S.E.2d 445 (1974), is that subject to certain exceptions evidence of collateral crimes is inadmissible:

> "Subject to exceptions, it is a well-established common-law rule that in a criminal prosecution, proof which shows or tends to show that the accused is guilty of the commission of other crimes and offenses at other times, even though they are of the same nature as the one charged, is incompetent and inadmissible for the purpose of showing the commission of the particular crime charged, unless such other offenses are an element of or are legally connected with the offense for which the accused is on trial."

In *State v. Harris,* 166 W.Va. 72, 76, 272 S.E.2d 471, 474 (1980), we explained some of the policy reasons behind this general rule:

> "The rationale for the rule announced in *Thomas* is that when one is placed on trial for the commission of a particular offense, he is to be convicted, if at all, on evidence of the specific charge against him. The purpose of the rule excluding evidence in a criminal prosecution of collateral offenses is to prevent a conviction for one crime by the use of evidence tending to show that the accused engaged in other legally unconnected criminal acts, and to prevent the inference that because the accused engaged or may have engaged in other crimes previously, he was more liable to commit the crime for which he is being tried."

Another reason underlying this rule is that the admission of collateral crime evidence is highly prejudicial and can result in a jury convicting a defendant based on his past misdeeds rather than on the facts of the present offense with which he is charged.[3] Such evidence of past misconduct "cannot be used to demonstrate the character of . . . the accused, in order to show that he has acted in conformity with his past acts." F. Cleckley, Handbook on Evidence for West Virginia Lawyers § 6.3(A) at 343 (2d ed. 1986).

We acknowledged in *Thomas* that there are exceptions to the general rule prohibiting evidence of collateral crimes, which most jurisdictions, including our own, recognize. In Syllabus Point 12 of *Thomas,* we summarized some of these exceptions:

> "The exceptions permitting evidence of collateral crimes and charges to be admissible against an accused are recognized as follows: the evidence is admissible if it tends to establish (1) motive; (2) intent; (3) the absence of mistake or

---

**3.** In 2 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 404[04] at 404–28 through –29 (1985), this thesis is expressed as follows:

> "Central to the Anglo-American system of criminal law is the concept that the accused must be protected against forcible inculpation—either through his words or proof of his past misdeeds. Closely analogous is the familiar rule that a man is innocent until proven guilty. One form of protection is constitu-

tional—the privilege against self-incrimination. A second—which may not be constitutionally guaranteed but which is accepted by all American jurisdictions—is the exclusionary rule embodied in Rule 404; it renders inadmissible, as part of the prosecution's evidence in chief, character evidence offered solely to show the accused's propensity to commit the crime with which he is charged." (Footnotes omitted).

accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others; and (5) the identity of the person charged with the commission of the crime on trial."

Although we attempted to summarize the exceptions in Syllabus Point 12 of *Thomas,* we stated in its text " 'that there are so many exceptions to the rule [barring collateral crimes] that it is difficult to determine which is more extensive—the rule or its acknowledged exceptions.' " 157 W.Va. at 654–55, 203 S.E.2d at 455. (Citations omitted). Many federal courts have similarly held that in applying Rule 404(b) of the Federal Rules of Evidence,[4] the exceptions to the admission of collateral crimes listed in the rule are not meant to be exhaustive. *E.g., United States v. Lewis,* 701 F.2d 972 (D.C. Cir.1983); *United States v. Morris,* 700 F.2d 427 (1st Cir.), *cert. denied,* 461 U.S. 947, 103 S.Ct. 2128, 77 L.Ed.2d 1306 (1983); *United States v. Hinton,* 543 F.2d 1002 (2d Cir.), *cert. denied,* 429 U.S. 980, 97 S.Ct. 493, 50 L.Ed.2d 589 (1976); *United States v. Woods,* 484 F.2d 127 (4th Cir.1973), *cert. denied,* 415 U.S. 979, 94 S.Ct. 1566, 39 L.Ed.2d 875 (1974); 2 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 404[08] (1985); McCormick on Evidence § 190 (3d ed. 1984).

Before a trial court can determine that evidence of collateral crimes is admissible under one of the exceptions, we have established a procedure that should be followed. In *State v. Nicholson,* 162 W.Va. 750, 252 S.E.2d 894 (1979), *overruled on other grounds, State v. Petry,* 166 W.Va. 153, 273 S.E.2d 346 (1980), we pointed out that an *in camera* hearing is necessary to allow a trial court to carefully consider the admissibility of collateral crime evidence.[5] Furthermore, we explained in *Nicholson* that an *in camera* hearing enables a trial court to properly balance the probative value of such evidence against its prejudicial effect, as stated in Syllabus Point 15 of *Thomas* :

"In the proper exercise of discretion, the trial court may exclude evidence of collateral crimes and charges if the court finds that its probative value is outweighed by the risk that its admission will create substantial danger of undue prejudice or confuse the issues or mislead the jury or unfairly surprise a party who has not had reasonable ground to anticipate that such evidence would be offered." [6]

In the present case, the trial court did hold an *in camera* hearing prior to trial to consider the admissibility of the collateral crime evidence. However, at the hearing, the specific collateral sexual offenses the State planned to present at trial and the possible applicable exceptions were simply discussed in general terms. The *in camera* hearing is rendered meaningless if a trial court is not informed specifically of the details surrounding each collateral offense and is not informed of which excep-

---

4. Rule 404(b) of the Federal Rules of Evidence is identical to our Rule 404(b), which became effective February 1, 1985, after the trial of this case, and states:

"*Other Crimes, Wrongs, or Acts.* —Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

5. The applicable language from *Nicholson,* 162 W.Va. at 757, 252 S.E.2d at 898, is: "[T]he trial court should require the state to disclose in advance, *in camera,* any evidence of collateral crimes it intends to introduce at the trial. This

disclosure is designed to permit the court to make the above determination relative to the probative value of such evidence." *See also State v. Headley,* 168 W.Va. 138, 282 S.E.2d 872 (1981); *State v. Messer,* 166 W.Va. 806, 277 S.E.2d 634 (1981) (per curiam); *State v. Haverty,* 165 W.Va. 164, 267 S.E.2d 727 (1980); *State v. Bush,* 163 W.Va. 168, 255 S.E.2d 539 (1979).

6. This same type of balancing test is now required under Rule 403 of the West Virginia Rules of Evidence, which provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *See* F. Cleckley, *supra,* § 6.3(B)(2).

tion is applicable. A trial court needs such information so that it can examine the similarities and differences between the collateral offenses and the present offense and can apply the balancing test to determine whether the probative value outweighs the prejudicial effect of such evidence.

■ A further procedural point made by many courts is that a collateral crime need not be proven beyond a reasonable doubt, but must be proven by clear and convincing evidence. *See, e.g., Manning v. Rose,* 507 F.2d 889 (6th Cir.1974); *United States v. Wormick,* 709 F.2d 454 (7th Cir.1983); *United States v. Wilford,* 710 F.2d 439 (8th Cir.1983), *cert. denied,* 464 U.S. 1039, 104 S.Ct. 701, 79 L.Ed.2d 166 (1984); *State v. Spargo,* 364 N.W.2d 203 (Iowa 1985); *State v. Ohnstad,* 359 N.W.2d 827 (N.D.1984); *State v. Parton,* 694 S.W.2d 299 (Tenn. 1985). We believe this is a sound rule and hereby adopt it.

■ Finally, in examining the similarities and differences between collateral crimes and the present offense charged, we have emphasized that the collateral crimes must have occurred reasonably close in point of time to the present offense. *See, e.g., State v. Messer,* 166 W.Va. 806, 277 S.E.2d 634 (1981) (per curiam); Syllabus Point 7, *State v. Withrow,* 142 W.Va. 522, 96 S.E.2d 913 (1957); Syllabus Point 3, *State v. Gargiliana,* 138 W.Va. 376, 76 S.E.2d 265 (1953); Syllabus Point 2, *State v. Evans,* 136 W.Va. 1, 66 S.E.2d 545 (1951); Syllabus Point 4, *State v. Lewis,* 133 W.Va. 584, 57 S.E.2d 513 (1949).

■ In examining the more narrow question of whether prior sexual offenses committed on the victim can be shown in the State's case in chief, we find that our case law is not entirely harmonious. In several of our earlier cases, which involved rape against a female under the age of consent, we indicated, without any extensive discussion of the legal rationale, that such testimony was permissible to show an improper or lustful disposition toward the victim. Syllabus Point 3, *State v. Beacraft,* 126 W.Va. 895, 30 S.E.2d 541 (1944); *State v. Lohm,* 97 W.Va. 652, 661, 125 S.E. 758, 761 (1924); Syllabus Point 8, *State v. Driver,* 88 W.Va. 479, 107 S.E. 189 (1921). In Syllabus Point 3 of *Beacraft,* the Court noted that the acts had to be "identical or closely similar" and were admissible to show an "improper disposition toward prosecutrix and to corroborate evidence of the particular act relied upon."[7] It should be noted that in none of these cases did the Court discuss the rule prohibiting the introduction of collateral crimes.

In several later cases, we held without referring to these earlier cases that the introduction of such evidence was inadmissible under the general rule prohibiting the admission of collateral crimes. *State v. Simmons,* 175 W.Va. 656, 337 S.E.2d 314 (1985) (per curiam); *State v. Moubray,* 139 W.Va. 535, 81 S.E.2d 117 (1954);[8] *State v. Gargiliana, supra.* In these cases, the collateral crimes did not fall into any of the exceptions permitting the admission of collateral crimes and, therefore, were found to be inadmissible. The improper or lustful disposition of the defendant toward the victim is not mentioned in these cases.

In other jurisdictions, cases can be found where courts have created what basically amounts to a sexual propensity exception under which other sexual acts not necessarily with the same person or dealing with the same type of sexual offense are permit-

---

**7.** The entire text of Syllabus Point 3 of *Beacraft* is: "In a prosecution for rape, evidence of acts prior and subsequent, identical or closely similar, to that upon which conviction is sought, is admissible to show that defendant entertained an improper disposition toward prosecutrix and to corroborate evidence of the particular act relied upon."

**8.** Syllabus Points 1 and 2 of *Moubray* state:

"1. The general rule is that the State, in a criminal case, may not introduce evidence of a substantive offense committed by the defendant which is separate and distinct from the specific offense charged in the indictment.

"2. Upon the trial of an indictment for incest evidence of the commission by the defendant of other separate and distinct offenses of the same type or nature as the specific offense with which he is charged is inadmissible."

ted to be introduced.[9] We believe this approach contradicts the fundamental premise upon which the collateral crime rule is based.

To recognize a sexual propensity exception in addition to the numerous exceptions to the collateral crime rule would provide a convenient path to damage a defendant's character and would sweep additional sexual offenses into evidence which would obviously prejudice and confuse a jury in its consideration of the crime charged in the indictment. What renders the reasoning of those courts which have adopted a sexual propensity exception so anomalous is their failure to acknowledge that sexual crime cases are by their very nature likely to be highly offensive to the average jury. Thus, the ability to further prejudice the jury by admitting additional collateral sexual offenses is even more apparent.

Bearing on this problem is the fact that the guilt of a defendant in a sexual offense case can be based solely on the uncorroborated testimony of the victim. We held in Syllabus Point 5 of *State v. Beck*, 167 W.Va. 830, 286 S.E.2d 234, 31 A.L.R.4th 103 (1981), that the uncorroborated testimony of the victim in a sexual offense case is sufficient to uphold a conviction, unless the testimony is inherently incredible. *See also* Syllabus Point 4, *State v. Green*, 163 W.Va. 681, 260 S.E.2d 257 (1979); *State v. Golden*, 90 W.Va. 496, 111 S.E. 320 (1922). For this reason, courts should be particularly wary of collateral sexual offense evidence and should be cautious in admitting such evidence.

For the foregoing reasons, we conclude it is impermissible for collateral sexual offenses to be admitted into evidence solely to show a defendant's improper or lustful disposition toward his victim. This holding is not only in accord with our decisions in *Simmons, Moubray,* and *Gargiliana*, but also is supported by many commentators in the evidence field.[10] Furthermore, several other courts have refused to adopt this propensity exception in sexual offense cases, choosing instead to analyze evidence of collateral sexual offenses under the general exceptions to the collateral crime rule. *See People v. Tassell*, 36 Cal.3d 77, 679 P.2d 1, 201 Cal.Rptr. 567 (1984) (in bank); *State v. Moore*, 440 So.2d 134 (La.1983); *State v. Curry*, 43 Ohio St.2d 66, 330 N.E.2d 720 (1975); *Commonwealth v. Shively*, 492 Pa. 411, 424 A.2d 1257 (1981).

We have consistently adopted a restrictive approach in admitting evidence of collateral crimes in criminal trials. For example, although the commentators contend that courts generally are quite liberal in admitting collateral crime evidence in narcotics cases,[11] we have refused to admit such evidence in a number of narcotics cases. *See, e.g., State v. Ruddle*, 170 W.Va. 669, 295 S.E.2d 909 (1982); *State v. Underwood*, 168 W.Va. 52, 281 S.E.2d 491 (1981); *State v. Messer, supra; State v. Harris, supra.*

In a related area, we have held that a criminal defendant who testifies at trial may not be impeached by evidence of prior criminal convictions unless the convictions were for perjury or false swearing or making false statements with intent to deceive,

9. *E.g., State v. Jerousek*, 121 Ariz. 420, 590 P.2d 1366 (1979) (in banc); *Jenkins v. State*, 474 N.E.2d 84 (Ind.1985); *State v. Spaulding*, 313 N.W.2d 878 (Iowa 1981); *State v. Craig*, 219 Neb. 70, 361 N.W.2d 206 (1985); *State v. Bernier*, 491 A.2d 1000 (R.I.1985); Annot., 77 A.L.R.2d 841 (1961).

10. Many of the commentators in the following list of articles are critical of the sexual propensity exception while others in this list attempt to explain how such evidence should be analyzed. *See* 1A J. Wigmore, Evidence § 62.2 (Tillers rev. 1983); Gregg, *Other Acts of Sexual Misbehavior and Perversion as Evidence in Prosecutions for Sexual Offenses*, 6 Ariz.L.Rev. 212 (1965); Slough & Knightly, *Other Vices, Other Crimes,*

41 Iowa L.Rev. 325 (1956); Weissenberger, *Making Sense of Extrinsic Act Evidence: Federal Rule of Evidence 404(b)*, 70 Iowa L.Rev. 579 (1985); Comment, *Admitting Evidence of Prior Sex Offenses—A New Trend*, 58 Nw.U.L.Rev. 108 (1963); Comment, *Defining Standards for Determining the Admissibility of Evidence of Other Sex Offenses*, 25 U.C.L.A. L.Rev. 261 (1977); Note, *Admissibility of Other Offense Evidence in Abnormal Sex Crime Cases*, 39 Calif.L.Rev. 584 (1951).

11. *See generally*, 2 J. Weinstein & M. Berger, *supra*, ¶ 404[12]; 22 C. Wright & K. Graham, Federal Practice & Procedure § 5239 at· 466 (1978).

which relate to his capacity for truthfulness. Syllabus Point 9, *State v. Clements*, 175 W.Va. 463, 334 S.E.2d 600, *cert. denied*, 474 U.S. 857, 106 S.Ct. 165, 88 L.Ed.2d 137 (1985); Syllabus Point 1, *State v. McAboy*, 160 W.Va. 497, 236 S.E.2d 431 (1977). This position is more restrictive than Rule 609 of the Federal Rules of Evidence. *See generally* 3 J. Weinstein & M. Berger, *supra*, ¶ 609[04].[12]

It is apparent that if we are to remain consistent with the restrictive view we have adopted with regard to collateral crime evidence, we must not permit a defendant's character to be assailed by broadening the exceptions to the collateral crime rule. To the extent that *Beacraft, Lohm,* and *Driver* allow collateral sexual offenses to be admitted into evidence to show an improper or lustful disposition toward the victim, they are overruled.

■ It must be remembered that from a procedural standpoint evidence admitted under one of the collateral crime exceptions is thought to be relevant to some aspect of the State's case. Such evidence is not admitted as proof of the ultimate guilt of the defendant. For this reason, it is customary to give the jury a limiting instruction with regard to its consideration of a collateral crime. This instruction generally provides that the evidence of a collateral crime is not to be considered as proof of the defendant's guilt on the present charge, but may be considered in deciding whether a given issue or element relevant to the present charge has been proven. When a defendant requests this limiting instruction, it must be given. *State v. Pancake*, 170 W.Va. 690, 694, 296 S.E.2d 37, 41 (1982).

■ In the present case, the basis for admitting the evidence of the collateral sexual offenses was to show intent, motive, and system. Each of these words carries a distinct and separate meaning and must not be used as blanket passports permitting the introduction of all collateral crime evidence. The term "intent" refers to the criminal intent of the defendant which is a material element of proof in many crimes. However, it is quite clear that there are certain crimes where criminal intent is not an element of the crime.

■ We have held this to be the case under our former incest statute, W.Va.Code, 61–8–12 (1931), which was one of the charges in this case. *State v. Moubray, supra.* Similarly, no specific showing of criminal intent was necessary as an element for the crime of rape since proof of doing the acts that constituted the offense was all that was required. *See generally State v. Burton*, 163 W.Va. 40, 254 S.E.2d 129 (1979); 75 C.J.S. *Rape* § 9 (1952). Furthermore, criminal intent is not a necessary element of our first degree sexual assault statute, W.Va.Code, 61–8B–3 (1976), under which the defendant was indicted in two separate counts.[13]

---

**12.** The *McAboy* restriction has been incorporated into Rule 609(1) of the West Virginia Rules of Evidence. In Syllabus Point 2 of *McAboy*, we also held: "Where a defendant elects to place his good character and reputation in issue at a criminal trial, prior convictions may then be introduced to impeach character and reputation."

**13.** We need not for the purposes of this case survey the other sexual offense statutes contained in W.Va.Code 61–8B–1 through –12, to determine if criminal intent is an element. *E.g., State v. Mitter*, 168 W.Va. 531, 285 S.E.2d 376 (1981). It would appear that prior to the enactment of our present sexual offense law in 1976, we held that for a conviction of the crime of assault with intent to commit rape, it was necessary to prove an intent to rape. *State v. Garten*, 131 W.Va. 641, 49 S.E.2d 561 (1948).

Obviously, where a collateral offense tends to prove a necessary element of the sexual offense, such evidence should be admitted for that purpose. For example, in Syllabus Point 4 of *State v. Pancake, supra*, we held: "Evidence that a defendant committed violent or turbulent acts toward a rape victim or toward others of which she is aware, is relevant to establish her fear of her attacker that is a major element of proof of first-degree sexual assault. W.Va.Code, 61–8B–1(1)(b)." *See also State v. Miller*, 175 W.Va. 616, 623, 336 S.E.2d 910, 917 (1985). Because the sexual assault conviction in the present case was based upon the age of the victim rather than the victim's fear of her attacker, this element of first degree sexual assault is not applicable to the present case.

■ Thus, we believe that in the present case, the evidence of collateral crimes should not have been admitted on the issue of intent because intent was not an element of any of the crimes charged in the indictment.

A good summary of the motive exception to the collateral crime rule can be found in 2 J. Weinstein & M. Berger, *supra,* ¶ 404[14] at 404–108 through –111, supported by a number of cases:

> "Motive has been defined as 'supply[ing] the reason that nudges the will and prods the mind to indulge the criminal intent.' Two evidentiary steps are involved. Evidence of other crimes is admitted to show that defendant has a reason for having the requisite state of mind to do the act charged, and from this mental state it is inferred that he did commit the act. Evidence of another crime has been admitted to show the likelihood of defendant having committed the charged crime because he needed money, sex, goods to sell, was filled with hostility, sought to conceal a previous crime, or to escape after its commission, or to silence a potential witness." (Footnotes omitted).

This motive exception sometimes arises in cases involving a charged offense that is not sexual in nature, such as kidnapping or murder, where the underlying motive was to obtain some sexual favor. *E.g., United States v. Bradshaw,* 690 F.2d 704 (9th Cir. 1982), *cert. denied,* 463 U.S. 1210, 103 S.Ct. 3543, 77 L.Ed.2d 1392 (1983); *United States v. Free,* 574 F.2d 1221 (5th Cir.), *cert. denied,* 439 U.S. 873, 99 S.Ct. 209, 58 L.Ed.2d 187 (1978); *United States v. Weems,* 398 F.2d 274 (4th Cir.1968), *cert. denied,* 393 U.S. 1099, 89 S.Ct. 894, 21 L.Ed.2d 790 (1969). In *State v. Miller,* 175 W.Va. 616, 622 n. 8, 336 S.E.2d 910, 916 n. 8 (1985), we recognized that authority existed under kidnapping statutes similar to ours, which refer to taking the victim for any concession or advantage, that "sexual gratification is a sufficient 'concession or advantage' or 'thing of value' to satisfy the kidnapping statute." (Citations omitted). In this situation, the collateral crime, i.e., the sexual offense, would be admissible.

■ However, where, as here, the main offense charged is sexual in nature, we do not believe that motive can be inferred from the fact that on prior occasions the defendant committed similar sexual acts with the same victim. Therefore, we conclude the collateral sexual offenses should not have been admitted to show motive.

■ The final theory on which the collateral crimes were sought to be introduced was to show a "system." This term is too broad to permit any rational analysis. In Syllabus Point 12 of *Thomas* we used the phrase "a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others." We discussed this exception at some length in *State v. Frasher,* 164 W.Va. 572, 265 S.E.2d 43 (1980), which involved an embezzlement scheme where several of the defendant's personal checks used in the embezzlement scheme had been shown to be worthless. We concluded that while worthless checks might constitute a separate crime, this did not violate the collateral crime rule because the checks were introduced as an integral part of the proof of the embezzlement scheme.

■ We also pointed out in *Frasher* that proof of a collateral crime could occur in situations in the greater and lesser included offense area. The State in proving the greater offense could collaterally show the lesser offense and this would not violate the collateral crime rule simply because the State may ultimately decide to go to the jury on the lesser included offense. This was recognized in Syllabus Point 11 of *Thomas,* where we said "unless such other offenses are an element of or are legally connected with the offense for which the accused is on trial." *See also State v. Wallace,* 175 W.Va. 663, 337 S.E.2d 321 (1985).

■ We think *Thomas*'s phraseology of "common scheme or plan" is the more appropriate terminology and conclude the collateral sexual offenses introduced in this case, varying as they do as to time and

manner of the acts committed, should not have been admitted to show a common scheme or plan.[14]

■ Based on the grounds urged for the admissibility of the collateral crimes in this case, we conclude they were not admissible.[15] We recognize, however, that trial counsel may not have made a sufficiently particularized objection when this matter was brought before the trial court in the defendant's motion *in limine.*

■ However, we conclude the trial court committed reversible error in improperly instructing the jury on this issue. The defendant offered an instruction informing the jury that any collateral sexual offenses committed by the defendant could only be considered in relation to the relevant considerations listed in Syllabus Point 12 of *Thomas.* Over the defendant's objection, the trial court amended this instruction so that not all of the collateral offenses were covered.[16]

We find this instruction to be flawed because the trial court cited only the collateral sexual offenses that occurred in Tennessee, Parkersburg, and prior to August 30, 1976, as falling into this collateral crime category.

The problem with limiting the instruction to these specific collateral sexual offenses is that the jury was not told for what purposes the remaining instances of collateral crimes were to be considered.[17] This error was particularly egregious because the jury might have considered the fifth incident, where the daughter was forced to perform oral sex when she was twelve or thirteen years old, as being included in the acts charged in count one of the indictment. By failing to limit all of the collateral crimes, the trial court confused the issue and left the jury free to consider the acts not mentioned as proof of the substantive charges.[18] We believe that this constituted reversible error.[19]

Therefore, because the trial court incorrectly instructed the jury on the evidence of collateral sexual offenses, we reverse the defendant's conviction in the Circuit Court of Kanawha County and remand this case for a new trial to be held in accordance with the principles discussed herein.

Reversed and Remanded.

McHUGH, Justice, dissenting:

I respectfully dissent with the majority's decision that evidence of collateral sexual

14. We recognize, but find inapplicable to the facts in this case, the theory that where a defendant commits a series of crimes which bear a unique pattern such that the *modus operandi* is so unusual it becomes like a signature, then evidence of such other crimes may be admissible. *See, e.g., United States v. Medina,* 761 F.2d 12 (1st Cir.1985); *United States v. Hamilton,* 684 F.2d 380 (6th Cir.), *cert. denied,* 459 U.S. 976, 103 S.Ct. 312, 74 L.Ed.2d 291 (1982); *People v. Golochowicz,* 413 Mich. 298, 319 N.W.2d 518 (1982); 2 J. Weinstein & M. Berger, *supra,* ¶ 404[16] at 404–128.

15. Although we find the evidence of collateral sexual offenses to be inadmissible under the three exceptions argued below, we do not preclude the State from seeking to admit this evidence for some other valid reason if the State is able to establish that another exception is applicable.

16. This instruction read as follows:
"The Court instructs the jury that any evidence of wrongdoing or of any similar act to the acts accused in the indictment may be considered by the jury but only in a limited form. The jury may not consider any similar acts, such as the alleged events of Nashville,

Tennessee, the Parkersburg-Vienna, West Virginia area, or any alleged wrongdoing previous to August 30, 1976, for any purpose other than consideration of motive, intent, or propensity of improper disposition towards [the victim]. In all events, whether you believe the similar acts to have occurred or not, you may not convict the defendant unless you believe beyond a reasonable doubt of his guilt as accused in counts one and three of the indictment, consistent with the other instructions of the Court."

17. The instruction failed to cover the third and fifth collateral offenses which are described in note 2, *supra.*

18. In view of our refusal to expand the collateral crime exceptions to include a sexual propensity exception, the language in the court's limiting instruction referring to the right of the jury to consider the collateral sexual offenses to show the defendant's propensity of improper disposition toward his daughter is disapproved.

19. Because of our reversal of this case, we decline to address the defendant's argument with regard to the sufficiency of the evidence.

offenses to show a defendant's improper or lustful disposition toward the victim was inadmissible.

Generally, the admission of evidence of collateral offenses is barred in a criminal case. There is merit to this general rule, in that it advances the premise that the accused should only be tried for the crime for which he or she is charged. This general rule also prohibits an attack on the defendant's character to show that the defendant acted in conformity therewith on a particular occasion. *See W.Va.R.Evid.* 404. This Court, however, has recognized the validity of carving out an exception in regard to sexual offenses:

> In a prosecution for an attempt to commit rape on a female under the age of consent, evidence of former attempts by the defendant upon the same female is admissible to show the lustful disposition of the defendant toward her, and the existence and continuance of illicit relations between them.

Syl. pt. 8, *State v. Driver*, 88 W.Va. 479, 107 S.E. 189 (1921). This holding was affirmed in *State v. Lohm*, 97 W.Va. 652, 125 S.E. 758 (1924), and *State v. Beacraft*, 126 W.Va. 895, 30 S.E.2d 541 (1944). The majority opinion expressly overrules *Driver, Lohm* and *Beacraft.*[*]

The majority has rejected the view that the introduction of evidence of the defendant's collateral offenses falls within any of the *Thomas* exceptions argued by the State as being applicable. Syl. pt. 12, *State v. Thomas*, 157 W.Va. 640, 203 S.E.2d 445 (1974). However, the majority recognizes that the exceptions to the rule may be more extensive than the rule of exclusion itself, and that federal courts have held that the list of exceptions is not exhaustive.

Even if the majority is correct that none of the *Thomas* exceptions are applicable in this case, there remains a legitimate reason for the admission of evidence of collateral

acts for this type of offense, which other jurisdictions have recognized. This specific exception authorizes the admission of evidence as to the defendant's lustful disposition toward the victim and is designed, in part, to reduce the incredibility of the victim's isolated testimony. The Supreme Court of Nebraska, in *State v. Craig*, 219 Neb. 70, 76, 361 N.W.2d 206, 212 (1985), held that "examined as an isolated episode unconnected with any background or antecedent events, incredibility engendered by the very improbability of the episode would cause the mind to boggle and recoil in disbelief." Similar rationale has been applied in Michigan: "Had not the victim been allowed to testify about the prior similar act, her testimony of her father's actions ... might well appear incredible." *People v. Bailey*, 103 Mich.App. 619, 625, 302 N.W.2d 924, 927 (1981). *See also State v. Bernier*, —— R.I. ——, 491 A.2d 1000 (1985); *Jenkins v. State*, 474 N.E.2d 84 (Ind.1985); *State v. Jerousek*, 121 Ariz. 420, 590 P.2d 1366 (1979); *State v. Spaulding*, 313 N.W.2d 878 (Iowa 1981); *State v. Acliese*, 403 So.2d 665 (La.1981).

The case now before us, like most cases of its kind, is one which ultimately depends upon credibility. The State's primary witness is the victim, and the events that transpired did so over a period of several years. As noted by the majority, this Court, in syl. pt. 5 of *State v. Beck*, 167 W.Va. 830, 286 S.E.2d 234 (1981), held that unless the victim's testimony is inherently incredible, it alone is sufficient to convict the defendant in an offense of this nature. Consequently, the victim's testimony as a crucial element of the State's case must be examined in context in order to establish a complete record of events, thereby reducing the incredibility of the victim's testimony. Therefore, carving out a sexual propensity exception allows the finder of facts to weigh the credibility of the victim's unabridged testimony.

---

[*] It should be noted that *State v. Simmons*, 175 W.Va. 656, 337 S.E.2d 314 (1985), *State v. Moubray*, 139 W.Va. 535, 81 S.E.2d 117 (1954), and *State v. Gargiliana*, 138 W.Va. 376, 76 S.E.2d 265 (1953), all cited in the majority opinion, did not refer to *Driver, Lohm* and *Beacraft.* All

three dealt with sexual offenses and barred admission of such collateral offenses. In none of these three cases, however, is the separate sexual propensity exception, as opposed to the *Thomas* exceptions, discussed.

Other authorities have also essentially supported the admission of testimony of collateral sexual offenses. "In prosecutions for statutory rape, or rape of a female under the age of consent, or an attempt to commit such rape, evidence which shows or tends to show prior offenses of the same kind committed by the defendant with the prosecuting witness is generally admissible." 65 Am.Jur.2d *Rape* § 72 (1972). *See also* 22A C.J.S. *Criminal Law* § 691(29) (1961); annot., 77 A.L.R.2d 841 (1961).

For the foregoing reasons, I am of the opinion that the trial judge did not err in admitting the testimony relating to other sexual offenses.

I am authorized to state that Justice BROTHERTON joins me in this dissent.