IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2016 Term

**FILED**
**June 3, 2016**
released at 3:00 p.m.
RORY L. PERRY, II CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 15-1198

STATE OF WEST VIRGINIA ex rel. PAMELA JEAN GAMES-NEELY,
Prosecuting Attorney,
Petitioner

v.

THE HONORABLE JOHN C. YODER, Judge of
the Circuit Court of Berkeley County; and DENNIS E. STREETS,
Respondent

Petition for Writ of Prohibition

WRIT GRANTED

Submitted:  April 13, 2016
Filed: June 3, 2016

Christopher Quasebarth, Esq.
Chief Deputy Prosecuting Attorney
Timothy D. Helman, Esq.
Assistant Prosecuting Attorney
Martinsburg, West Virginia
Counsel for the Petitioner

B. Craig Manford, Esq.
Martinsburg, West Virginia
Counsel for the Respondent
 Dennis E. Streets

JUSTICE WORKMAN delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1. "The State may seek a writ of prohibition in this Court in a criminal case where the trial court has exceeded or acted outside of its jurisdiction. Where the State claims that the trial court abused its legitimate powers, the State must demonstrate that the court's action was so flagrant that it was deprived of its right to prosecute the case or deprived of a valid conviction. In any event, the prohibition proceeding must offend neither the Double Jeopardy Clause nor the defendant's right to a speedy trial. Furthermore, the application for a writ of prohibition must be promptly presented." Syl. Pt. 5, *State v. Lewis*, 188 W. Va. 85, 422 S.E.2d 807 (1992).

2. "Failure to make timely and proper objection to remarks of counsel made in the presence of the jury, during the trial of a case, constitutes a waiver of the right to raise the question thereafter either in the trial court or in the appellate court." Syl. Pt. 6, *Yuncke v. Welker*, 128 W. Va. 299, 36 S.E.2d 410 (1945).

3. "'The plain error doctrine of W. Va. R. Crim. P. 52(b), whereby the court may take notice of plain errors or defects affecting substantial rights although they were not brought to the attention of the court, is to be used sparingly and only in those circumstances in which a miscarriage of justice would otherwise result.' Syllabus Point 2,

i

*State v. Hatala*, 176 W. Va. 435, 345 S.E.2d 310 (1986)." Syl. Pt. 4, *State v. Grubbs*, 178 W. Va. 811, 364 S.E.2d 824 (1987).

4. "To trigger application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." Syl. Pt. 7, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995).

5. "An appellant or plaintiff in error will not be permitted to complain of error in the admission of evidence which he offered or elicited[.]" Syl. Pt. 2, in part, *State v. Bowman*, 155 W. Va. 562, 184 S.E.2d 314 (1971).

6. "Four factors are taken into account in determining whether improper prosecutorial comment is so damaging as to require reversal: (1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) absent the remarks, the strength of competent proof introduced to establish the guilt of the accused; and (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters." Syl. Pt. 6, *State v. Sugg*, 193 W. Va. 388, 456 S.E.2d 469 (1995).

Workman, Justice:

The petitioner Pamela Jean Games-Neely, Prosecuting Attorney for Berkeley County (also referred to as "the State"), seeks a writ of prohibition to prevent the circuit court from enforcing its November 24, 2015, order granting a new trial to the respondent, Dennis E. Streets. The State argues that the circuit court erred: 1) by granting a new trial when Mr. Streets failed to object to the alleged error during trial; 2) in determining that the State improperly attacked Mr. Streets' character, when he first placed his character in issue and invited error; and 3) by granting Mr. Streets a new trial when the alleged error was harmless. Upon consideration of the parties' briefs and arguments, the appendix record and all other matters submitted before the Court, we find sufficient grounds to grant the requested writ.

## I. Factual and Procedural Background

Mr. Streets was a thirty-two-year veteran of the Berkeley County Sheriff's Department ("sheriff's department"). He was indicted on one felony count of embezzlement and one felony count of fraudulent schemes. Mr. Streets was alleged to have embezzled thirteen guns from the sheriff's department and fraudulently sold the guns to a gun dealer called Glockcop LLC. Mr. Streets was tried in April of 2015 and a jury found him not guilty of fraudulent schemes, but was hung on the embezzlement count and a mistrial was declared. The State decided to retry Mr. Streets on the embezzlement count.

1

Prior to the retrial, on August 4, 2015, the State filed a notice of intent to use Rule 404(b) evidence. *See* W. Va. R. Evid. 404(b)(2).[1] The evidence at issue consisted of certified public records of six judgments against Mr. Streets, with supporting documents, from various lawsuits involving wrongful occupation and defaults on residential rental agreements, a default on a furniture installment agreement, nonpayment of medical bills, wage garnishment and home foreclosure (hereinafter referred to collectively as "the Rule 404(b) evidence"). These documents established debt owed by Mr. Streets in excess of $38,000.[2] The State indicated in its notice that the evidence was offered to show motive. "More specifically, these records demonstrate that the Defendant was in deep financial trouble on or about the time of the alleged thefts, and that this financial trouble was his motive to steal guns from the Sherriff's [sic] department and sell them for personal gain." On August 14, 2015, Mr. Streets responded to the State's notice by filing a motion to restrict the use of Rule 404(b) evidence. The circuit court held a *McGinnis*[3] hearing on August 20,

---

[1]West Virginia Rule of Evidence 404(b)(2) provides, in part: "(2) *Permitted uses; notice in a criminal case*. – This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."

[2]The State also sought to introduce multiple documents regarding the foreclosure of Mr. Streets' home including the Trustee's Report of Sale, Publication of Sale, Notice of Trustee's Sale to Mr. Streets and creditors holding liens on the subject property.

[3]*See* Syl Pt. 2, *State v. McGinnis*, 193 W. Va. 147, 455 S.E.2d 516 (1994) ("Where an offer of evidence is made under Rule 404(b) of the West Virginia Rules of Evidence, the trial court, pursuant to Rule 104(a) of the West Virginia Rules of Evidence, is to determine its admissibility. Before admitting the evidence, the trial court should conduct an *in camera*
(continued...)

2

2015, and determined that the evidence of the various judgments against Mr. Streets was admissible to show motive pursuant to Rule 404(b).  Mr. Streets objected to the ruling.

Mr. Streets' retrial on the embezzlement count occurred on August 25, 26 and 27, 2015.[4] The State presented evidence from multiple witnesses, as well as Glockcop LLC's business records, including pages from its Federal Bureau of Alcohol, Tobacco, Firearms, and Explosives firearm acquisitions logs, and business records from the sheriff's department showing that guns from the evidence room and from the special response team had been sold for cash at the Glockcop LLC by Mr. Streets.  Further, Sheriff Lemaster testified that Mr.

---

[3](...continued)
hearing as stated in *State v. Dolin*, 176 W. Va. 688, 347 S.E.2d 208 (1986).  After hearing the evidence and arguments of counsel, the trial court must be satisfied by a preponderance of the evidence that the acts or conduct occurred and that the defendant committed the acts.  If the trial court does not find by a preponderance of the evidence that the acts or conduct was committed or that the defendant was the actor, the evidence should be excluded under Rule 404(b).  If a sufficient showing has been made, the trial court must then determine the relevancy of the evidence under Rules 401 and 402 of the West Virginia Rules of Evidence and conduct the balancing required under Rule 403 of the West Virginia Rules of Evidence.  If the trial court is then satisfied that the Rule 404(b) evidence is admissible, it should instruct the jury on the limited purpose for which such evidence has been admitted.  A limiting instruction should be given at the time the evidence is offered, and we recommend that it be repeated in the trial court's general charge to the jury at the conclusion of the evidence.").

[4]The evidence from the trial, which is summarized for purposes of providing a backdrop for the issue now before the Court, is largely taken from the State's brief.   The entire trial transcript was not provided in the appendix record as, according to the State in its brief, some of the trial testimony was not available at the time the petition was filed.  Mr. Streets does not dispute the trial testimony or the exhibits referenced in the State's brief, in any way, in his response to the petition.

3

Streets was the sole officer in charge of the evidence room of the sheriff's department at the time of the embezzlement charge. Sheriff Lemaster testified that Mr. Streets was also the only person in charge of the program of trading guns for store credit at local gun shops. Sheriff Lemaster stated that excess firearms from the evidence room could be destroyed or there was a procedure by which those firearms could be converted to credit so that service weapons or ammunition could be obtained. The sheriff testified that only store credit could be obtained for the weapons traded under this program, not cash. Despite the store credit only policy, Cliff Vinson, the owner of Glockcop LLC, testified to various cash transactions between his store and Mr. Streets involving the firearms at issue, which came from the evidence room of the sheriff's department and the special response team. Finally, the State introduced the Rule 404(b) evidence described above in the case. This evidence came in during Sgt. Brendan Hall's testimony.[5]

Mr. Streets, in his defense, called four witnesses. Mr. Streets also testified. He admitted selling some of the guns that had come from the sheriff's department. Mr. Streets claimed that he had sold the guns by mistake. As he explained, his father had been a gun collector and had recently passed away, leaving him numerous firearms. Mr. Streets said that he decided to sell these firearms because he was having financial difficulties. Mr. Streets testified that he had taken some of the guns from his father's collection to the

_____

[5]Sgt. Hall was also with the sheriff's department.

4

sheriff's department to run background checks on the serial numbers in order to make sure that none of the weapons had been stolen. Mr. Streets stated that he accidently commingled his firearms with those from the sheriff's department and took them to Glockcop LLC for sale.

Significant to the issue now before this Court, Mr. Streets was questioned during both direct and cross-examination about the Rule 404(b) evidence. During Mr. Streets' direct examination, he chose to offer explanations for several of the judgments and the foreclosure on a house he owned. When questioned about the house that they (referring to Mr. Streets and his wife) had lost to foreclosure, Mr. Streets' counsel asked him what had happened. Mr. Streets testified: "We didn't really lose – well we gave up the house." Mr. Streets further explained that "I had a lot of trouble in the neighborhood. There was a house directly across the street from us that was a drug house and had been raided actually twice by the task force. . . . [T]here was [sic] a lot of problems going on in my neighborhood. I couldn't take it any more." Mr. Streets proceeded to testify that they had made arrangements through a realtor to build a house, but then his wife had to leave work and "[d]ue to the problems in the neighborhood we wanted out of there. There was no other way of doing it. Just could not take living there any longer." He said that then the housing market crashed and that they were unable to sell their house. So, according to Mr. Streets, "[w]e moved and just let the bank have the house back because of the stress of living there just wasn't worth

5

staying there." As to one of the default judgments against him, Mr. Streets testified that he did not answer because he knew that he owed the money and he did not have the money to pay it. As to another of the judgments that was in favor of David Pittsnogle, Mr. Streets testified, "[t]hat money is owed. For lack of a better term I considered that to be a slumlord. There was [sic] a lot of problems with the house." Mr. Streets stated that the home "wasn't habitable" so they moved out, but they were behind in rent for four or five months when they moved. Regarding a $26,000 judgment against him, Mr. Streets stated that they signed a two-year lease for $1400 a month on a home because it was the only place that would allow them to have pets. He stated that they tried to negotiate a lesser amount, but "[t]hey would not budge on the two-year lease so we signed it anyway hoping that finances would change and [we would] find some way of getting more money and be able to pay it."

During cross-examination,[6] Mr. Streets confirmed that he just gave up the house that was subject to foreclosure because "[t]here was a drug house directly across the street from where I lived." When asked if he was having trouble making the house payments, Mr. Streets responded: "No, I don't believe I was having trouble making house payments. I was approved for a loan for a new house while we were still living there." According to Mr. Streets, he just "decided to walk away from it[,]" and "just quit making payments on it."

---

[6]The defense did not object to any of the State's questions regarding the Rule 404(b) evidence during cross-examination.

Mr. Streets explained that they had placed the house on the market, when the market crashed. When asked why they moved to another house, rather than staying in the house, Mr. Streets stated that "[t]o do it the right way, . . . we should have." Instead, Mr. Streets and his wife rented another home, but then walked away from that home, because they could "[b]arely" make the monthly rental payments. As for the next home, Mr. Streets decided to walk away from that obligation too as he claimed the owner was a slumlord.

As part of the closing argument before the jury, the State, based upon Mr. Street's testimony during trial, made the following comments, which were not objected to by the defense:

> The motive. You know, we talked about his motive that he was in debt. Not just in debt. He was in debt up to his neck with $38, 000, six different judgments. He'd been foreclosed on, evicted I believe three times we have records of three different evictions and his wages were being garnished. You know, everybody has financial problems at one point and I wouldn't hold that against him but it is a motive and could cause somebody under extreme financial pressure to do something you wouldn't normally expect of them. Ladies and gentlemen, I would argue that when he got up there and started explaining some of these records if he was asked about his home foreclosure and he just said, you know, I'm sorry it's tough financial times I couldn't afford the payments it went into foreclosure you know what I can't fault the guy for that. That happens to **good people** and I'd have probably just left it at that. But do you recall his explanation of the home foreclosure? That didn't sound right to me. He said he just walked away from it. He said he walked away from it because of the neighbors across the street. It was a drug house across the street and he felt justified walking away, and further he said that he had been

7

approved for another home.  I can't recall if it was building or purchasing some other home in Back Creek.  He had gotten loan approval for it to go there.  So his testimony was he walked away from his house because he didn't like what was going on across the street and he had a better situation somewhere else. Is that really believable?  And then the other situation didn't workout so he has to rent instead.  He doesn't just go back to the house he's at. Well. I think ladies and gentlemen, he wasn't being completely honest about that.  ***But let's assume that he was being honest about that don't you think that gives a little bit of insight about his character? If the story is as he described that he just walked away from it because he didn't like the situation he felt justified in doing that what else might he feel justified in doing?***

. . . .

And again I don't hold that against him it happens to a lot of honest people but he was dishonest about this when he testified But consider this – all right, let's give him the benefit of the doubt that when he says he walked away from all three of those situations and he says he just walked away and you want to believe well that means that you're then going to trust the testimony of somebody who entered into a contract and decided he was justified in walking away from it and defaulting on his obligations just because he felt justified not because of his financial troubles. He said it was because he didn't like the neighbors across the street. It was because Pittsnogle was a slumlord. And remember his testimony of Monique Milas he said oh we could afford the payment it just kind of made things tough so we left. All right. ***He feels justified in that. What else might he feel justified in doing***?

(Emphasis added).

Subsequently, the jury found Mr. Streets guilty of embezzlement of $1,000 or more.  Mr. Streets filed a Motion for a New Trial and a Motion for Judgment of Acquittal

8

Notwithstanding the Verdict in which he argued that the State had made "several comments regarding how . . . [Mr. Streets] just walked away from his mortgage and other words to that effect, clearly implying that . . . [Mr. Streets] was a bad person who simply cheated people by not paying his bills." Thus, Mr. Streets contended that the State had used the Rule 404(b) evidence outside the scope of its intended purpose. Thereafter, counsel for Mr. Streets obtained the transcript of the State's closing argument and filed a Supplemental Motion for New Trial citing specific examples, which are those emphasized above, as further support for the argument that the State made reference to Mr. Streets' bad character.[7]

The State responded to Mr. Streets' motion, arguing that the comments made during closing argument were proper as Mr. Streets opened the door during his testimony and the comments went toward Mr. Streets' credibility. Further, the State argued that counsel for Mr. Streets failed to object to the State's cross-examination and closing argument and, therefore, waived any argument. Finally, the State maintained that if there was an error during closing argument, it was harmless given the overwhelming evidence introduced against Mr. Streets.

---

[7]Mr. Streets also argued that the circuit court erred in failing to direct a verdict in his favor at the close of the evidence and, alternatively, that the jury's verdict was contrary to the evidence. This alleged basis for the motion was not addressed due to the court's granting a new trial based upon the State's comments made during the closing argument.

The circuit court held a hearing on the post-trial motions on October 29, 2015.[8] By order entered November 24, 2015, the circuit court granted Mr. Streets' motion for a new trial and "overturned and set aside" his felony conviction for embezzlement. In so doing, the circuit court questioned whether it "may have committed error by even allowing the evidence [referring to the Rule 404(b) evidence] in as direct evidence, because the case turned into a sideshow on . . . [Mr. Streets'] debts and the reasons for the debts." Nonetheless, the circuit court found that "[t]o the extent that the State's closing argument went to point out . . . [Mr. Streets'] financial condition which provided a possible motive to commit the thefts in question and to impeach or rebut the credibility of this testimony, no improper comments were made." The circuit court, however, further determined that when the State "insinuated that . . . [Mr. Streets] was not a good person because of his explanation of why his house was foreclosed upon was not simply because he was going through tough financial times[]" and "went on to comment that . . . [Mr. Streets'] reasons for walking away from his mortgage weren't 'right[,]' . . . [t]hese comments clearly go past the scope of the State's intended purpose for admission of this evidence . . . and are improper." The circuit court further found fault with the State's use of the word "character" in its closing argument, finding that "[t]his comment strikes at the heart of the prohibition against proving guilt by use of the prior character, bad acts or misconduct" of Mr. Streets. The circuit court found that "the improper

[8]Like portions of the trial transcript, there is no transcript of this hearing in the record. Mr. Streets indicated in his brief that the presiding court reporter "recently had foot surgery" and was "currently unavailable to transcribe same."

comments made by the State were clearly prejudicial to . . . [Mr. Streets].”[9]

After reaching this determination, the circuit court next addressed the State's argument that the issue of any improper comments made during closing had been waived by counsel for Mr. Streets' failure to object. Conversely, Mr. Streets argued that he objected to "the allowance of Rule 404(b) evidence or evidence of collections against the Defendant at pretrial which objection was renewed at trial. How more can the Defendant object?" Mr. Streets further argued that the taint was "so great and at such an opportune time for the State" that "any objection then made and being sustained by the Court, even with an additional cautionary instruction, would have been too little too late!" The circuit court implicitly agreed with the State's contention that the defense had failed to properly preserve the error during trial, because the circuit court proceeded to analyze the issue under the plain error doctrine.[10] The circuit court ultimately found "the State's comments in closing argument

_____

[9]The circuit court relied upon *State v. Rollins*, 233 W. Va. 715, 760 S.E.2d 529 (2014), wherein we held in syllabus point one that "'[a] judgment of conviction will not be set aside because of improper remarks made by a prosecuting attorney to a jury which do not clearly prejudice the accused or result in manifest injustice.' Syl. pt. 5, *State v. Sugg*, 193 W. Va. 388, 456 S.E.2d 469 (1995)."

[10]From a review of the motion and supplemental motion filed by counsel for Mr. Streets, no plain error argument was ever made by Mr. Streets. We do note that there is no transcript of the hearing that occurred on the post-trial motions and perhaps an oral argument was made on this issue by counsel; however, Mr. Streets never indicates that this occurred. In his response brief before the Court, counsel for Mr. Streets argues that "the Court agreed with the Respondent's argument that the State's improper comments were so egregious that even if an objection had been timely made, the damage or 'taint' to the Respondent had
(continued...)

were improper, constituted plain error, and denied the Defendant a fair trial." According to the circuit court, despite its belief "that there was substantial evidence against the Defendant without the State's improper comments for a jury to convict him of the offense, the Court cannot say beyond a reasonable doubt that the Defendant would have been convicted if such comments had not been made."

It is from this order that the State now seeks a writ of prohibition to prevent the circuit court from enforcing the order and to remand the case to the circuit court to proceed with sentencing.

## II. Standard of Review

This Court held in syllabus point five of *State v. Lewis*, 188 W. Va. 85, 422 S.E.2d 807 (1992):

> The State may seek a writ of prohibition in this Court in a criminal case where the trial court has exceeded or acted outside of its jurisdiction. Where the State claims that the trial court abused its legitimate powers, the State must demonstrate that the court's action was so flagrant that it was deprived of its right to prosecute the case or deprived of a valid conviction. In any event, the prohibition proceeding must offend neither the Double Jeopardy Clause nor the defendant's right to a speedy

---

[10](...continued)
already occurred and could not have been corrected by an corrective measures the Court might employ." Mr. Streets then argues that "[t]he Court then found that the lack of objection . . . was not fatal to his Motion for New Trial noting the same was plain error. . . ."

12

trial. Furthermore, the application for a writ of prohibition must
be promptly presented.

It is with this standard in mind that we consider whether the requested writ of prohibition

should be granted.

## III. Discussion

The issue before the Court is whether the circuit court exceeded its legitimate

power by depriving the State of a valid conviction in granting Mr. Streets a new trial. The

State argues that Mr. Streets failed to object to the alleged improper comments made during

closing and, therefore, he has waived this issue. Mr. Streets argues, with no supporting

authority, that his general objection made at the time the circuit court granted the State's

motion to use the financial information as proof of motive pursuant to West Virginia Rule

of Evidence 404(b) "was broad enough to encompass the improper comments concerning .

. . [Mr. Streets'] character made by the State in closing."

We, therefore, must ascertain whether the alleged error concerning improper

comments made by the State was properly preserved before the circuit court. In *State v.*

*Adkins*, 209 W. Va. 212, 544 S.E.2d 914 (2001), the Court recognized that "[t]he rule in

West Virginia has long been that '[i]f either the prosecutor or defense counsel believes the

other has made improper remarks to the jury, a timely objection should be made coupled with

a request to the court to instruct the jury to disregard the remarks.' Syl. pt. 5, in part, *State*

13

*v. Grubbs*, 178 W. Va. 811, 364 S.E.2d 824 (1987)." *Adkins*, 209 W. Va. at 215, 544 S.E.2d at 917. We also held in syllabus point six of *Yuncke v. Welker*, 128 W. Va. 299, 36 S.E.2d 410 (1945), that "[f]ailure to make timely and proper objection to remarks of counsel made in the presence of the jury, during the trial of a case, constitutes a waiver of the right to raise the question thereafter either in the trial court or in the appellate court." *Accord Rollins*, 233 W. Va. at 720, 760 S.E.2d at 534, Syl. Pt. 3; *Adkins,* 209 W. Va. at 213, 544 S.E.2d at 915, Syl. Pt. 2; *see also State v. Mann*, 205 W. Va. 303, 313-14, 518 S.E.2d 60, 70-71(1999) (finding that the defendant cannot argue for the first time on appeal that the prosecutor made improper remarks during closing); *State v. Lewis*, 133 W. Va. 584, 608, 57 S.E.2d 513, 528 (1949) (stating that "[i]n order to take advantage of remarks considered improper they must be objected to and counsel must request the court to instruct the jury to disregard them.").

It is undisputed that Mr. Streets' objection to the circuit court allowing the Rule 404(b) evidence to be introduced at trial to show Mr. Streets' motive to embezzle from the sheriff's department was properly preserved before the circuit court. West Virginia Rule of Evidence 103(2)(b) provides that "[o]nce the court rules definitively on the record–either before or at trial–a party need not renew an objection or offer of proof to preserve a claim of error for appeal." That objection, however, failed to cover the alleged improper argument of the State during closing. Rather, had an objection to the alleged improper argument of the State during closing been made, it should have been expressed as exceeding the scope of the

14

circuit court's Rule 404(b) ruling allowing evidence of motive or improperly attacking Mr. Streets' character during the closing. *See* W. Va. R. Evid. 404(a)(1) ("Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait.").

Thus, we agree with the State and the circuit court that counsel for Mr. Streets failed to object to the alleged improper argument made by the State in order to give the court an opportunity to rule on the objection and to preserve the alleged error. *State v. DeGraw*, 196 W. Va. 261, 272, 470 S.E.2d 215, 226 (1996) ("West Virginia Rule of Evidence 103(a)(1) provides, in pertinent part, that '[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and . . . [i]n case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context. . . .' *Id.* (emphasis added). In interpreting the significance of Rule 103(a)(1), Justice Cleckley in his *Handbook on Evidence for West Virginia Lawyers* states: 'the objecting party should not benefit from an insufficient objection if the grounds asserted in a valid objection could have been obviated had the objecting party alerted the offering party to the true nature of the objection.' 1 Franklin D. Cleckley, *Handbook on Evidence for West Virginia Lawyers* § 1-7(C)(2) at 78 (3rd ed. 1994)[.]"). Consequently, Mr. Streets' continuing objection to the circuit court's determination that the Rule 404(b) evidence was

15

admissible was insufficient to preserve the alleged error regarding the prosecutor's comments during trial.

This determination, however, does not completely resolve the issue before us because the circuit court granted Mr. Streets relief by applying the plain error doctrine. We have held:

> "The plain error doctrine of W. Va. R.Crim. P. 52(b), whereby the court may take notice of plain errors or defects affecting substantial rights although they were not brought to the attention of the court, is to be used sparingly and only in those circumstances in which a miscarriage of justice would otherwise result." Syllabus Point 2, *State v. Hatala*, 176 W. Va. 435, 345 S.E.2d 310 (1986).

*Grubbs*, 178 W. Va. at 812, 364 S.E.2d at 825, Syl. Pt. 4. By its very nature, the plain error doctrine is reserved for only the most flagrant errors. In order "[t]o trigger application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." Syl. Pt. 7, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995). Further, regarding the application of the doctrine to comments during closing, we have cautioned lawyers that

> the doctrine of plain error with regard to objectionable closing remarks is sparingly applied. This rule requires counsel to make timely objections so that the matter can be corrected at the trial court level. There is obviously a considerable tactical advantage to be gained if counsel can remain silent and then press the point on appeal through the plain error doctrine.

*Grubbs*, 178 W. Va. at 818, 364 S.E.2d at 832.

Based upon our review of the closing argument made by the State and the circuit court's ruling emanating therefrom, we find that the circuit court erred in applying the plain error doctrine in this case. Specifically, we conclude that the circuit court erred in determining that "there was obviously an error in that the prior bad character or misconduct of the Defendant was used not only to prove motive, but clearly to insinuate that he acted in conformity with that bad character in committing the offense." Much of the State's closing argument focused upon Mr. Streets' testimony during cross-examination where he repeatedly stated that he "walked away" from three debts associated with homes in which he had resided. Mr. Streets denied having financial difficulty in making the payments for his home that was foreclosed upon, but he just decided to "walk away" from that home because there was a "drug house" across the street. As to the home that Mr. Streets and his wife had rented, they "walked away" from that home as well, because they could "[b]arely" make the monthly payments on it. Finally, they "walked away" from another home Mr. Streets described as a "slumlord" situation.

Readily discerned from Mr. Streets' testimony is that he opened the door for the State's argument. Mr. Streets offered explanations for the judgments against him that were grounded in him being a good person. In other words, Mr. Streets offered that he was

17

not to blame for the judgments. Instead, the judgments were the result of a drug house across the street or a slumlord. He implied through his excuses that he was a good guy with good explanations for having the judgments against him. We have previously held that "[a]n appellant or plaintiff in error will not be permitted to complain of error in the admission of evidence which he offered or elicited[.]" Syl. pt. 2, in part, *State v. Bowman*, 155 W. Va. 562, 184 S.E.2d 314 (1971); see *State v. Hanson*, 181 W.Va. 353, 363, 382 S.E.2d 547, 557 (1989). Consequently, Mr. Streets cannot now complain of any alleged error in the State's closing argument that was a direct result of his testimony.

As we have recognized in *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995), that "[a] proper closing argument in a criminal case involves the summation of evidence, any reasonable inferences from the evidence, responses to the opposing party's argument, and pleas for law enforcement generally." *Id*. at 678 n.27, 461 S.E.2d at 184 n.27 (citing *Coleman v. State*, 881 S.W.2d 344 (Tex. Crim. App. 1994)). To this end, while attorneys are given great latitude in arguing their cases, "[i]t is equally well settled, that counsel must keep within the evidence and not make statements calculated to inflame the minds of jurors intending to induce verdicts warped by prejudice." *State v. Kennedy*, 162 W.Va. 244, 249, 249 S.E.2d 188, 191 (1978) (quoting *State v. Lohm*, 97 W.Va. 652, 663, 125 S.E. 758, 762 (1924)).

Based upon Mr. Streets' testimony, which focused upon his justification for the monetary judgments that had been introduced to show motive, the State was warranted in arguing that just as Mr. Streets felt justified in walking away from various debts, he might also feel justified in committing the crime with which he was charged. The State certainly pushed the envelope with its comments during closing argument that Mr. Streets' explanations about the monetary judgments provided "insight about" Mr. Streets' "character" and could have unnecessarily placed into jeopardy a case that was well supported by the evidence. These unnecessary comments by an overzealous prosecutor are frustrating and we do not approve of them; however, the prosecutor's comments did not constitute error in this case. *Miller*, 194 W. Va. at 7, 459 S.E.2d at 118, Syl. Pt. 7.

Even assuming, arguendo, that the State's limited remarks made during closing were in error, the error was harmless in light of the evidence offered in this case. Despite the circuit court's determination that the error resulted in Mr. Streets not receiving a fair trial, we disagree. As we stated in *Guthrie*,

> [t]he rule in West Virginia since time immemorial has been that a conviction will not be set aside because of improper remarks and conduct of the prosecution in the presence of a jury which do not clearly prejudice a defendant or result in manifest injustice. *State v. Beckett*, 172 W.Va. 817, 310 S.E.2d 883 (1983); *State v. Buck*, 170 W.Va. 428, 294 S.E.2d 281 (1982).

194 W. Va. at 684, 461 S.E.2d at 190. Further,

> [t]he harmless error doctrine requires this Court to

consider the error in light of the record as a whole, but the standard of review in determining whether an error is harmless depends on whether the error was constitutional or nonconstitutional. It is also necessary for us to distinguish between an error resulting from the admission of evidence and other trial error. As to error not involving the erroneous admission of evidence, we have held that nonconstitutional error is harmless when it is highly probable the error did not contribute to the judgment. *State v. Hobbs*, 178 W.Va. 128, 358 S.E.2d 212 (1987) (prosecutor's remarks although improper must be sufficiently prejudicial to warrant reversal); *State v. Brewster*, 164 W. Va. 173, 261 S.E.2d 77 (1979).

194 W. Va. at 684, 461 S.E.2d at 190. Finally, this Court applies the following test for

determining whether improper prosecutorial comment is so damaging as to require reversal:

Four factors are taken into account in determining whether improper prosecutorial comment is so damaging as to require reversal: (1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) absent the remarks, the strength of competent proof introduced to establish the guilt of the accused; and (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters.

Syl. Pt. 6, *State v. Sugg*, 193 W. Va. 388, 456 S.E.2d 469 (1995).

Based upon our review of the comments at issue, they were limited in the

context of a forty-five minute closing, they did not mislead the jury and they were not

deliberately placed before the jury to divert its attention. *See id.* Further, the issue of the

comments was nonconstitutional in nature as they emanated from an evidentiary ruling.

Thus, the issue turns on whether it is "highly probable the error did not contribute to the

20

judgment." *Guthrie*, 194 W. Va. at 684, 461 S.E.2d at 190.

We find that any error with the State's closing argument did not contribute to Mr. Streets' conviction. There was substantial evidence of Mr. Streets' guilt admitted in this case that supports his conviction. The evidence included business records that documented Mr. Streets receiving cash from the sale of various firearms. There were also records that established the firearms came from the sheriff's department. Further, the sheriff testified that Mr. Streets was not allowed to trade any firearms from the department for cash. There was also evidence that Mr. Streets was the sole person in charge of the evidence room for the sheriff's department and the program of trading the firearms for store credit. Further, there were six monetary judgments against Mr. Streets, which demonstrated he was in debt, giving him a motive to embezzle. The overwhelming evidence introduced at trial would support the jury's conviction without the State's comments during closing argument. Thus, we find the circuit court erred in its determination that the case "was not 'fairly tried' as the State's comments in closing argument were improper, constituted plain error, and denied the Defendant a fair trial."

## IV. Conclusion

Based upon the foregoing reasons, the circuit court exceeded its legitimate powers in overturning and depriving the State of a valid conviction by setting aside Mr. Streets' conviction and granting him a new trial. *See Lewis*, 188 W. Va. at 86, 422 S.E.2d

21

at 808, Syl. Pt. 5.  Therefore, the State is entitled to relief in prohibition.  Accordingly, the November 24, 2015, order is vacated, and this case is remanded for Mr. Streets' sentencing on the conviction obtained.

Writ granted.