**FILED**

**May 19, 2026**

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**State of West Virginia ex rel.,**
**State of West Virginia,**
**Petitioner,**

**v.) No. 25-582** (Jackson County CC-18-2025-F-52)

**The Honorable Lora Dyer, Judge,**
**Circuit Court of Jackson County,**
**West Virginia, and Jesse Wood,**
**Defendant Below, and Party in Interest,**
**Respondents.**

## MEMORANDUM DECISION

Petitioner State of West Virginia seeks a writ of prohibition to prevent the enforcement of an order entered September 10, 2025, by the Circuit Court of Jackson County granting Respondent Jesse Wood's motion to appoint a special prosecutor in the underlying proceeding. The State argues that the circuit court erred in removing the Jackson County Prosecuting Attorney's Office and applying Rule 17 of the West Virginia Rules of Criminal Procedure to issue ex parte subpoenas duces tecum to Mr. Wood under seal. Mr. Wood responds that the State has improperly requested extraordinary relief based on the misguided assumption that defense counsel violated her discovery obligations. He argues that the circuit court acted within its discretion by appointing a special prosecutor and issuing the subpoenas.[1]

As explained below, this Court is unable to review the circuit court's application of Rule 17 because the State petitions "for an extraordinary writ based upon a non-appealable interlocutory decision of a trial court," but did not request that the "court set out in an order findings of fact and conclusions of law that support and form the basis of its decision."[2] Furthermore, the State does not meet the standard for extraordinary relief because it does not contend that the circuit court's action in appointing a special prosecutor was "so flagrant that it was deprived of its right to prosecute the case or deprived of a valid conviction."[3] Finding no substantial question of law, we

---

[1] Petitioner appears by counsel John B. McCuskey, Attorney General, Holly M. Mestemacher, Assistant Attorney General, and Michele Duncan Bishop, Senior Assistant Attorney General. Respondent Wood appears by counsel Meghan Scarberry.

[2] Syl. Pt. 6, in part, *State ex rel. Allstate Insurance Company v. Gaughan*, 203 W. Va. 358, 508 S.E.2d 75 (1998).

[3] Syl. Pt. 1, in part, *State ex rel. Games-Neely v. Yoder*, 237 W. Va. 301, 787 S.E.2d 572 (2016) (quoting Syl. Pt. 5, *State v. Lewis*, 188 W. Va. 85, 422 S.E.2d 807 (1992), *superseded by*

1

determine that a memorandum decision denying the request for extraordinary relief is appropriate. *See* W. Va. R. App. P. 21.

## I. Factual and Procedural History

In the underlying proceeding, Mr. Wood faces felony charges for failure to register as a sex offender, second offense.[4] He filed an omnibus discovery motion and a motion for speedy trial. The State filed its discovery, supplemental discovery, and request for reciprocal discovery. Mr. Wood's jury trial was scheduled to begin on September 16, 2025.

Mr. Wood filed three ex parte applications for subpoena duces tecum under "vault seal," which rendered the filings inaccessible by the State, seeking documents from an "adult parole authority." The circuit court granted his requests in orders it styled as "Order Issuing Requested Subpoenas Duces Tecum Under Seal and Sealing the Ex-Parte Application for a Subpoena Duces Tecum and This Order Issuing Said Subpoenas," under seal, allowing the parties to access the notice of filing without the ability to view the documents themselves.[5] After learning that the Jackson County Prosecuting Attorney's Office had gained access to these orders, Mr. Wood filed a motion for the appointment of a special prosecutor.

The circuit court conducted a pre-trial hearing on September 8, 2025, where it considered Mr. Wood's motion. He argued that the ex parte subpoena process was necessary due to his indigency, and that a special prosecutor was required because the State had reviewed an ex parte order of the court that contained information that could prejudice his case by revealing his trial strategy. The State responded that Mr. Wood improperly requested production of documents under Rule 17(b) of the West Virginia Rules of Criminal Procedure, which allows indigent defendants to make ex parte applications for compulsory process of *witnesses*. The State alleged, however, that the proper rule for the production of *documentary evidence* is Rule 17(c), which contains no ex parte provisions and grants the State the opportunity to request quashing or modification of a subpoena duces tecum. The State further argued that simply viewing a request for documents, which is what occurred in this case, would not reveal the defense trial strategy in a manner that would warrant the removal of the Jackson County Prosecuting Attorney's Office. At the conclusion of the hearing, the circuit court granted Mr. Wood's motion.[6] The State moved for a stay of the proceeding for one week so it could "consider seeking the appropriate writ[,]" and the

---

*statute on other grounds as stated in State v. Butler*, 239 W. Va. 168, 179 n.27, 799 S.E.2d 718, 729 n.27 (2017)).

[4] W. Va. Code § 15-12-8(c).

[5] Because the ex parte orders were filed "under seal," the CourtPLUS system automatically provided them to the parties. However, documents filed "under vault seal" are not delivered to the parties.

[6] The circuit court also informed the parties that it would no longer accept electronically filed ex parte applications for subpoenas duces tecum. It instructed the parties to personally deliver them to the judge's chambers.

circuit court denied the motion. The circuit court entered its order granting Mr. Wood's motion for the appointment of a special prosecutor on September 10, 2025.

The State filed a Petition for Writ of Prohibition with this Court on September 12, 2025, arguing that the circuit court allowed Mr. Wood to engage "in a dubious practice that usurps the discovery process that the West Virginia Rules of Criminal Procedure prescribe." In his amended response, Mr. Wood stated that his best defense to the charges is to show that he was an Ohio resident visiting West Virginia at the time of the allegations and that he was trying to gather documents from his Ohio probation officer to support that claim. Mr. Wood explained that after receiving the documents, he decided not to use them at trial, thereby triggering no requirement to disclose them to the State under Rule 16 of the West Virginia Rules of Criminal Procedure.

## II. Standard of Review

"A writ of prohibition is an extraordinary remedy reserved for extraordinary causes." *State ex rel. Yurish v. Faircloth*, 243 W. Va. 537, 543, 847 S.E.2d 810, 815 (2020) (citing *State ex rel. Vanderra Resources, LLC v. Hummel*, 242 W. Va. 35, 40, 829 S.E.2d 35, 40 (2019)). "A writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court. It will only issue where the trial court has no jurisdiction or having such jurisdiction exceeds its legitimate powers. W. Va. Code 53-1-1." Syl. Pt. 2, *State ex rel. Peacher v. Sencindiver*, 160 W. Va. 314, 233 S.E.2d 425 (1977). The factors to be considered for issuance of a writ of prohibition are well-established:

> In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Syl. Pt. 4, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996). Where the State seeks relief in a criminal case by writ of prohibition alleging that the circuit court has abused its legitimate powers,

> the State must demonstrate that the court's action was so flagrant that it was deprived of its right to prosecute the case or deprived of a valid conviction. In any event, the prohibition proceeding must offend neither the Double Jeopardy Clause nor the defendant's right

to a speedy trial.  Furthermore, the application for a writ of prohibition must be promptly presented.

Syl. Pt. 1, in part, *State ex rel. Games-Neely v. Yoder*, 237 W. Va. 301, 787 S.E.2d 572 (2016) (quoting Syl. Pt. 5, *State v. Lewis*, 188 W.Va. 85, 422 S.E.2d 807 (1992), *superseded by statute on other grounds as stated in State v. Butler*, 239 W. Va. 168, 179 n.27, 799 S.E.2d 718, 729 n.27 (2017)).

With these standards in mind, we turn to the parties' arguments.

### III.  Discussion

The State seeks the extraordinary relief of prohibition, arguing two points:  (1) Rule 17 of the West Virginia Rules of Criminal Procedure does not permit ex parte applications for subpoenas duces tecum; and (2) disqualification of the Jackson County Prosecuting Attorney's office was error because the citizens of Jackson County have a right to be represented by their elected prosecutor.  The parties devote much of their briefing to the Rule 17 issue, as it is the center of the dispute that informs our inquiry of whether the circuit court exceeded its legitimate powers by appointing a special prosecutor.  Our analysis, then, properly begins there.

*A. Rule 17 of the West Virginia Rules of Criminal Procedure*

West Virginia Rule of Criminal Procedure 17 governs the issuance of subpoenas.  Rule 17(a) describes the process for obtaining subpoenas returnable at trial by those who are able to pay for them.  Specifically, under Rule 17(a), any party who is able to pay the fees and mileage of a subpoenaed witness may request a blank subpoena to be issued by the clerk of the court as a matter of course, without judicial intervention, and may then fill in the time and place at which the witness must attend and testify.  W. Va.  R. Crim. P. 17(a).

Rule 17(b) describes the procedure for defendants who are unable to pay the required fees, stating in pertinent part that "[t]he court shall order at any time that a subpoena be issued for service on a named witness upon an ex parte application of a defendant upon a satisfactory showing that the defendant is financially unable to pay the fees of the witness and that the presence of the witness is necessary to an adequate defense."  W. Va. R. Crim. P. 17(b).  Although prior judicial authorization is required, the ex parte nature of the Rule 17(b) request serves to put an indigent defendant on equal footing with those who are able to pay the required fees.

Rule 17(c) in turn governs the issuance of subpoenas duces tecum and enables either party to obtain documents or other physical evidence.[7]  Unlike a subpoena issued under Rule 17(a) or

---

[7] Specifically, Rule 17(c) provides:

A subpoena may also command the person to whom it is directed to produce the books, papers, documents or other objects designated therein.  The court on motion made promptly may quash or modify the subpoena if compliance would be unreasonable or oppressive.  The court may direct that books, papers, documents

4

17(b) to compel a witness to appear at trial, the circuit court has discretion to direct that a subpoena duces tecum be made returnable before trial. However, courts have cautioned that Rule 17 of the Federal Rules of Criminal Procedure, which contains similar language to our Rule 17, should not be used as a discovery device. *See, e.g., United States v. Nixon*, 418 U.S. 683, 689 (1974).

The parties dispute whether Rule 17(c) provides a procedure for an indigent defendant to request an ex parte application for the issuance of a subpoena duces tecum. They rely on authority from other jurisdictions to support their respective positions.[8] The parties agree on one point: this Court has not addressed the issue.

The State contends that, "[o]n information and belief, the Jackson County Public Defender's Office has persuaded" the circuit court to "follow a controversial practice in *some federal district courts* that permit indigent criminal defendants to obtain ex parte subpoenas duces tecum returnable before trial under Rule 17 of the *Federal* Rules of Criminal Procedure under *very limited circumstances*." The State argues that the practice offends the reciprocal discovery process and is unnecessary because a defendant represented by a public defender corporation should not require assistance from the court to obtain compulsory process.

On the other hand, Mr. Wood states that a majority of the federal courts that have considered the issue have held that the plain language of Rule 17(c) of the Federal Rules of Criminal Procedure permits the issuance of an ex parte subpoena duces tecum. He argues that although Rule 17(c) of the West Virginia Rule of Criminal Procedure does not contain the phrase "ex parte," it should be read in conjunction with subsection (b), which does, because subsection (c) provides that a subpoena "may *also* command the person to whom it is directed to produce the books, papers, documents or other objects designated there." W. Va. R. Crim. P. 17 (emphasis added).

The circuit court did not address the Rule 17 issue in its order. In instances where a litigant intends to seek extraordinary relief from an interlocutory order of a circuit court where that court has no duty to make findings and conclusions, this Court has instructed that the complaining party has the burden of requesting a detailed order so that the reviewing court may have a clear understanding of the ruling being challenged. As we held in syllabus point six of *State ex rel. Allstate Insurance Company v. Gaughan*, 203 W. Va. 358, 508 S.E.2d 75 (1998):

---

or objects designated in the subpoena be produced before the court at a time prior to trial or prior to the time when they are to be offered in evidence and may upon their production permit the books, papers, documents or objects or portions thereof to be inspected by the parties and their attorneys.

[8] *See, e.g.*, *United States v. Fox*, 275 F. Supp. 2d 1006, 1010–11 (D. Neb. 2003) (discussing Rule 17 of the Federal Rules of Criminal Procedure, stating "[s]ome courts have construed Rule 17(c) as not providing for the issuance of a pretrial subpoena duces tecum upon an ex parte application under any circumstance[,]" while "[o]ther courts have held that ex parte applications under Rule 17(c) may be appropriate in limited circumstances[,]" and citing cases).

A party seeking to petition this Court for an extraordinary writ based upon a non-appealable interlocutory decision of a trial court, must request the trial court set out in an order findings of fact and conclusions of law that support and form the basis of its decision. In making the request to the trial court, counsel must inform the trial court specifically that the request is being made because counsel intends to seek an extraordinary writ to challenge the court's ruling. When such a request is made, trial courts are obligated to enter an order containing findings of fact and conclusions of law. Absent a request by the complaining party, a trial court is under no duty to set out findings of fact and conclusions of law in non-appealable interlocutory orders.

Although the underlying proceeding in *Gaughan* was a civil matter, this Court has applied the above holding in criminal matters. *See, e.g.*, *State ex rel. Lewis v. Hall*, 241 W. Va. 355, 359, 825 S.E.2d 115, 119 (2019) (citing *Gaughan* when denying defendant's request for a writ of prohibition seeking to prohibit prosecutor from calling the clerk of the court as a witness because defendant failed to raise the matter before the trial court).

In this case, the State seeks to prohibit enforcement of an interlocutory order. However, contrary to our instruction in *Gaughan*, the State failed to advise the circuit court that it intended to seek an extraordinary writ to challenge its ruling and request that the court set forth in its order findings of fact and conclusions of law that support the basis of its decision.[9] Consequently, the circuit court's order contains neither. Without such an order, this Court cannot sufficiently evaluate whether, as the State argues, the circuit court committed clear legal error for purposes of issuing the extraordinary relief requested.[10]

*B. Appointment of a Special Prosecutor*

To serve the ends of justice and preserve public confidence in the criminal justice system, circuit courts must sometimes appoint a special prosecutor. The statute authorizing appointment

---

[9] In moving for a stay following the September 2025 hearing, the State represented to the circuit court that it was "consider[ing] seeking the appropriate writ[.]" That representation is not a "request" sufficient to trigger the circuit court's obligation to enter an order containing findings of facts and conclusions of law under *Gaughan*. *Id.*, Syl. Pt. 6, in part, 203 W. Va. at 368, 508 S.E.2d at 85.

[10] *See State ex rel. Navient Solutions, LLC v. Wilson*, No. 19-0874, 2020 WL 2765857, at *5 (W. Va. May 27, 2020) (memorandum decision) ("[I]t is impossible to determine whether the lower court's action [i.e., denying a motion for summary judgment] is 'clearly erroneous' for purposes of issuing a writ of prohibition, where it has presented the Court with no analysis beyond a summary conclusion that there are disputed facts."); *State ex rel. Brison v. Kaufman*, 213 W. Va. 624, 630, 584 S.E.2d 480, 486 (2003) (reiterating that "[t]he findings required of a circuit court . . . are critical when an otherwise interlocutory order . . . is brought before this Court upon a request for relief in prohibition[,]" and stating that "the right of a litigant to file a petition for extraordinary relief in such a case carries with it the responsibility to ask the circuit court to set forth findings and conclusions in order to make the discovery ruling clear").

6

of a special prosecutor provides, as relevant to this case, that: "If, in any case, the prosecuting attorney and his assistants are unable to act, or if in the opinion of the court it would be improper for him or his assistants to act, the court shall appoint some competent practicing attorney to act in that case." W. Va. Code § 7-7-8.

The State contends that the *Hoover* factors support the issuance of a writ of prohibition to prevent the circuit court from removing the Jackson County Prosecuting Attorney's Office from prosecuting Mr. Wood. It notes that Mr. Wood conceded that the State received the circuit court's order granting his ex parte request for subpoena duces tecum through no fault of its own. And the State claims that there is nothing in the description of the application or order that reveals Mr. Wood's trial strategy. It also questions why the court would issue ex parte *orders* granting Mr. Wood's request for subpoenas. The State claims that its exclusion from the process leaves the impression that defense counsel "developed a secret ally" in the circuit court and that the court endorsed "the covert practice." The State argues that it has no other adequate means, such as direct appeal, to ensure that the citizens of Jackson County are represented by their prosecuting attorney. Finally, the State argues that this practice is "an oft repeated error" in the county[11] and "manifests persistent disregard for either procedural or substantive law[.]" *See* Syl. Pt. 4, *Hoover*, 199 W. Va. 12, 483 S.E.2d 12.

Mr. Wood responds that the circuit court was justified in substituting the prosecuting attorney to preserve fairness because, when the State received the orders granting his request for ex parte subpoena duces tecum, it became privy to his trial strategy. He further contends that there was no prejudice to the State or the citizens of Jackson County by the court appointing a special prosecutor and that due process is best served by having a prosecutor untainted by privileged defense information.[12]

As this Court explained in *Faircloth*, writs of prohibition are prerogative writs, extremely narrow in scope and operation; they are to be used with great caution and forbearance, and they should issue only in cases of extreme necessity. 243 W. Va. at 542, 847 S.E.2d at 815. Critically, the State does not meet the standard for extraordinary relief because it does not contend that the circuit court's action in appointing a special prosecutor was "so flagrant that it was deprived of its

---

[11] The parties state that the Circuit Court of Jackson County has appointed a special prosecutor under similar circumstances in two other cases in 2025.

[12] Mr. Wood also requests that this Court sanction the State and dismiss the underlying case with prejudice because its petition "is replete with baseless accusations of misconduct against" his counsel and the circuit judge. Mr. Wood accuses the State of misrepresenting the law, omitting relevant authority, and falsely accusing him and the circuit judge of unethical conduct. He claims that the State caused a delay that deprived him of his right to a speedy trial. However, this Court has recognized that the sanction of dismissal should be used sparingly. *See, e.g., State ex rel. Rusen v. Hill*, 193 W. Va. 133, 141, 454 S.E.2d 427, 435 (1994) ("Sanctions generally should not have adverse effects on the rights of the parties; a dismissal with prejudice necessarily has a substantial effect on the interest of the community and the party represented by the prosecution.") (quotation marks and citation omitted). We discern no bad faith in the State actions, but rather a genuine dispute between the parties. Therefore, we decline Mr. Wood's request.

right to prosecute the case or deprived of a valid conviction." Syl. Pt. 1, in part, *Yoder*, 237 W. Va. 301, 787 S.E.2d 572. Further, as explained above, the State petitioned for extraordinary relief seeking to prohibit enforcement of an interlocutory order but failed to satisfy its obligation under *Gaughan* to request an order containing findings of fact and conclusions of law from the circuit court. Therefore, we conclude that the State is not entitled to extraordinary relief.

## IV. Conclusion

For the foregoing reasons, we deny the Petition for a Writ of Prohibition.

Writ denied.

**ISSUED:** May 19, 2026

**CONCURRED IN BY:**

Justice William R. Wooton
Justice Charles S. Trump IV
Justice Thomas H. Ewing
Justice Gerald M. Titus III

**CONCURRING:**

Chief Justice C. Haley Bunn

Bunn, Chief Justice, concurring:

I concur in the majority's conclusion that the State seeks a substantive ruling on ex parte subpoena procedures, which issue is not properly before this Court in the current procedural posture of the case. I further agree that this Court is precluded from review of the underlying decision to disqualify the Jackson County prosecutor for lack of a sufficient order outlining the circuit court's findings and conclusions as to either posed issue under Syllabus Point 6 of *State ex rel. Allstate Insurance Company v. Gaughan*, 203 W. Va. 358, 508 S.E.2d 75 (1998), and that it was incumbent upon the State to secure that order. I write separately to underscore that disqualification of an elected prosecutor is a grave measure that should be ordered only where the circumstances demand it. When a circuit court disqualifies a prosecutor summarily and with levity, it assails the separation of powers and offends due process.

Under West Virginia Code § 7-7-8, the circuit court has authority to hear motions on and to determine whether disqualification of a prosecuting authority is necessary: "If, in any case, the prosecuting attorney and his assistants are unable to act, or if in the opinion of the court it would be improper for him or his assistants to act, the court shall appoint some competent practicing attorney to act in that case."

While this statute would appear to vest in the circuit court unfettered discretion in matters of prosecutorial disqualification, this Court has explained that the boundaries of a court's authority to disqualify an elected prosecutor are drawn by the West Virginia Constitution. As such, a court's "opinion" that it would be improper for the prosecutor to act may not be unmoored from a legitimate factual basis, is not a temperamental inquiry, and should not be taken lightly or with such frequency as to implicate the appearance of bias.

The office of the prosecuting attorney is a public office created by the Constitution, and whose duties emanate from it. *State ex rel. Preissler v. Dostert*, 163 W. Va. 719, 730, 260 S.E.2d 279, 286 (1979) (citing W. Va. Const. art. 9, §1). Those duties of the prosecuting attorney are owed to the public, and more specifically, to his or her county electorate, to whom the prosecuting attorney acts as a fiduciary and for whom he or she must perform the duties of office "honestly, faithfully and to the best of his [or her] ability." *Id.* (citation omitted). "[T]he office is a public trust created in the interest of and for the benefit of the people, and it imposes upon the officer who assumes it certain duties for the public good." *Id.* Accordingly, this Court held at Syllabus Point 2 of *Preissler*, "The prosecuting attorney is a constitutional officer who exercises the sovereign power of the State at the will of the people and he is at all times answerable to them. W. Va. Const., art. 2, §2; art. 3, §2; art. 9, §1." *Id.*

Those constitutional duties are further refined by West Virginia Code § 7-4-1(a), which provides, in relevant part, that

> The prosecuting attorney *shall attend to the criminal business of the state in the county in which he or she is elected* and qualified and when the prosecuting attorney has information of the violation of any penal law committed within the county, the prosecuting attorney *shall institute and prosecute* all necessary and proper proceedings against the offender[.]

(Emphasis added). As the prosecutor is bound by law to execute the duties of the office, a circuit court's conclusion that the prosecutor is incapable of doing so may not be reached without abiding appropriate process. *See Preissler*, 163 W. Va. at 731, 260 S.E.2d at 286 ("These procedures for permanent removal from office clearly provide for a full hearing and presentation of evidence, not only in recognition of the prosecutor's due process rights, but also in contemplation of the responsibilities imposed on the prosecutor by the Constitution."). *See also* W. Va. Const. art. 4 §6, art. 9, §4; West Virginia Code §§ 6-6-7, 11-1-5, 61-5-28.

This Court has observed that those procedural and substantive safeguards before permanent removal from office extend even to those situations where the prosecutor is *temporarily* disqualified, reasoning that the distinction is "one of degree and not kind." *Preissler*, 163 W. Va. at 731, 260 S.E.2d at 286. Consequently, a circuit court cannot discharge a prosecutor—even temporarily—from the obligations of his or her office unless upon "a clear and convincing showing of his failure to fulfill his official responsibilities." *Id*. Even in the case of a prosecutor's voluntary recusal, the court has an obligation to ensure that the reasons are "not frivolous or improper." *Id.* at 732, 260 S.E.2d at 287.

9

The Court in *Preissler* distinguished inherent disqualification apparent from the record and those situations where the development of facts is necessary before disqualification may be appropriate under West Virginia Code § 7-7-8.[1] Concluding that because "the prosecuting attorney is elected by the people of the county to represent them in prosecutions against criminal offenders[,]" "the public has a right to know why the attorney they have selected to represent them and whose salary they pay with their taxes, is unfit to prosecute a given case." *Id.* The Court thus held that "[b]efore a prosecuting attorney may be disqualified from acting in a particular case and relieved of the duties imposed upon him by the Constitution and by statute, the reasons for his disqualification must appear on the record, and where there is any factual question as to the propriety of the prosecutor acting in the matter, he must be afforded notice and an opportunity to be heard." Syl. Pt. 3, *id*.

The respondent's motion for appointment of a special prosecutor acknowledges that the prosecutor obtained information through incidental disclosure and states generally that the defendant was prejudiced by it. The circuit court appropriately held a hearing on the motion to disqualify the prosecutor because the need for disqualification was neither inherent nor readily apparent in the absence of factual development. Still, a review of the transcript from that hearing appears that it was in name only and one that devolved into a dissection of Rule 17 rather than an inquiry into whether this prosecutor obtained information that actually exposed trial strategy requiring disqualification.

The circuit court heard the statement from defense counsel that the ex parte subpoena and resulting order were asked to be placed under seal *because* it could potentially reveal trial strategy. The stated basis for disqualification relied on arguments made when seeking that ex parte subpoena to which the State was, obviously, not privy. The only basis for disqualification articulated during the disqualification hearing was that the disclosure prejudiced the defendant because the State knew he sought records, generally, from the adult parole authority. *How* disclosure of that limited information prejudiced the defendant, impacted trial strategy, or otherwise made the prosecutor unable to serve was not laid on the record. Defense counsel offered to provide argument on that point, but, again, only on an ex parte basis.

It stands to reason that if the ex parte order's impact on trial strategy was so obvious that the need for disqualification was apparent from its face, there would be little need to conduct further ex parte proceedings to offer argument on it.[2] Ominously eluding the intendedly open

---

[1] *Preissler* involved a charge that the prosecutor should be disqualified for *failing* to prosecute. The Court found that a circuit court could not summarily recuse the prosecutor on that basis and must hold a hearing, distinguishing those circumstances from the proceedings in *State ex rel. Matko v. Ziegler*, 154 W. Va. 872, 179 S.E.2d 735 (1971) where the elected prosecutor had been indicted for a felony and the circuit court appointed a special prosecutor to act in his stead.

[2] While the issue remains beyond our reach procedurally, the ex parte nature of the proceedings strikes at the heart of the issues raised here insofar as there is apparently continuous inadvertent disclosure of those orders resulting in repeated disqualification of the prosecutor's office.

process of disqualification by way of ex parte argument calls into question whether the Jackson County Prosecutor's due process rights before disqualification were observed because, arguably, he was never confronted with the actual basis for it.

Concerningly absent from the transcript is even a conclusory finding by the circuit court that the basis for disqualification was that the disclosure prejudiced the defendant because it impacted trial strategy. The court's record findings are limited to the conclusion, "the Court finds in favor of the defense and does grant the motion requesting appointment of a special prosecutor for reasons as stated by the Defense here on the record."

The void created by the absence of factual findings regarding the prosecutor's disqualification suggests a need for further review, yet as outlined in the majority, the State failed to request a sufficient order pursuant to *Gaughan*. Without knowing how, or—more to the point— *if* the circuit court properly exercised its discretion in temporarily disqualifying a constitutional officer and, correspondingly, whether its methods assuaged due process, we are too constrained to afford relief. For that reason, I concur with the majority's refusal of the requested petition for a writ of prohibition.